258 So.2d 162 (1972)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Habeeb MONSUR, Jr., et al., Defendants-Appellees.
No. 3725.
Court of Appeal of Louisiana, Third Circuit.
February 7, 1972.
Rehearing Denied March 1, 1972.
Writ Refused April 6, 1972.
*163 Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Alfred Mansour, of Mansour & Lauve, Alexandria, for defendants-appellees.
Before FRUGE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Highways, under the provisions of LSA-R.S. 48:441 et seq. The defendants are Habeeb Monsur, Jr., and Neil Daspit. A part of defendants' property was taken by the state for use in improving and relocating a section of U.S. Highway 71 in Rapides Parish.
The suit was filed and the order of expropriation was signed on November 12, 1969. Plaintiff deposited $39,156.00 in the registry of the court, representing its estimate of the value of the property taken and severance damages. Defendants answered, praying that they be awarded $110,100.00, less the amount deposited in the registry of the court.
The case was tried on March 31, 1971, and thereafter judgment was rendered by the trial court condemning plaintiff to pay defendants $70,809.00, less the amount previously deposited. Plaintiff appealed. Defendants have answered the appeal, praying that the amount of the award be increased to $86,650.00.
The issue, generally, is whether the award made by the trial court is either excessive or inadequate.
The parent tract which defendants owned at the time of the taking contained 10.27 acres. It was located about threefourths of a mile south of the corporate limits of the City of Alexandria, on the west side of U.S. Highway 71, in Rapides Parish. It had a frontage of 670.56 feet on that highway, by a depth of 646.80 feet, extending from the highway to the right of way of the Chicago Rock Island and Pacific Railway Company. It was bounded on the east by Highway 71, on the south by property owned by Joseph J. Medica, on the west by the railroad right of way and on the north by property owned by Chester D. Wells, et al. A moderately high pressure gas pipe line ran on and along the west side of this 10.27 acre tract, parallel to and near the railroad right of way.
Defendants purchased this 10.27 acre parent tract from Josephine Medica Genova on February 6, 1969, or about nine months before this expropriation suit was filed. The purchase price for the entire tract was $60,000.00, or a little less than $6,000.00 per acre.
On the day the property was purchased, defendants recorded in the clerk's office a plat which subdivides the 10.27 acre tract into 20 lots and two streets, and designates that area as the Renee Subdivision. The plat was prepared by Louis J. Daigre, Civil Engineer, on February 3, 1969. The two streets shown on the plat are each 50 feet wide, and they run east and west through the proposed subdivision, extending from the highway on the east to the railroad right of way on the west.
In this expropriation proceeding plaintiff has taken the full ownership of practically all of the east part of defendants' parent tract. The property being taken includes all of the Renee Subdivision lots which have a frontage on U.S. Highway 71, except for a part of Lot 20, in the southeast corner of that subdivision, which has a frontage of 150 feet on the highway. The property which is being expropriated is to be used for relocating, improving and *164 four-laning U.S. Highway 71. When the construction of this new highway is completed, of course, defendants' remaining property will have access to it.
The land being taken here comprises 5.12 acres of the original 10.27 acre parent tract. The expropriation order, however, decrees plaintiff to be the owner of three separate parcels of land, so as to exclude from the taking the dedicated public streets shown in the plat of the Renee Subdivision. These three parcels contained a total of 181,863 square feet. There remained after the taking a part of Lot 20, containing 12,750 square feet, located in the southeast corner of the parent tract and having a frontage of 150 feet on Highway 71. There also remained the western part of the parent tract, containing 134,666 square feet and including the entire frontage of the parent tract on the railroad right of way.
A plat showing the 10.27 acre tract involved in this suit, and the adjoining tract of land owned by Joseph J. Medica, is attached hereto and marked "Appendix A." This plat shows the subdivision of defendants' parent tract into 20 lots, with the dedication of two streets running east and west through it. The plat also shows the part of the Medica tract and the portions of defendants' property which have been taken by plaintiff. The three parcels of land which plaintiff has taken from defendants in the instant suit are designated on the attached plat as Tract "9-4," Tract "9-9" and Tract "9-10."
Defendants' property is level and is generally well drained. It is located in a rural area, and up to the time of the taking it had never been used for any purpose other than for farming. There were no improvements on the land, except for a frame house located partly on that land and partly on the adjoining Medica tract. No value was attached to that house.
Shortly after defendants purchased the property they cut two dirt streets running east and west in the locations shown on the plat. They never received a permit to install culverts in the ditches along the west side of the highway, however, so there has never been any access to these streets, and they apparently have never been used. No improvements, other than the cutting of these streets, were made on the property between the time defendants purchased it and the date of the taking. One appraiser stated that "the dirt streets were simply ditched in," and the photographs in the record show that only a minimum amount of dirt work was done to identify these two strips of land as streets.
Lots Five and Six of this subdivision were sold by defendants on February 18, 1969. These two lots were located in the extreme northwest corner of the parent tract, adjoining the railroad right of way, and no part of either of those lots has been expropriated by plaintiff. Both lots were reconveyed to defendants at a later date, so at the time of the trial defendants still owned all of the remainder of the parent tract. None of the appraisers attached any significance, insofar as determining value is concerned, to the fact that two lots had been sold by and returned to defendants.
The appraisers who testified at the trial concluded that the highest and best use of the subject property was for commercial and industrial use, although no property in that immediate vicinity had been developed for that purpose. They apparently reached that conclusion because the land fronted on a public highway and on a railroad, it had ready access to a railroad siding or spur track, natural gas was available for commercial or industrial use, and very little land with immediate access to a railroad and a good highway was available in that area.
Darrell V. Willet, a real estate expert called by plaintiff, appraised defendants' property twice, the first appraisal being made as a unit or as open acreage, without considering the plat of Renee Subdivision. The second appraisal was made as subdivision property, on a lot or front foot or *165 square foot basis. On his first appraisal, he concluded that the 10.27 acre parent tract had a total value of $72,063.00, or an average per acre value of $7,017.00. He felt, however, that the part of the property which fronted on U.S. Highway 71, to a depth of 200 feet (and containing 3.145 acres), had a value of $68,500.00, or more than $22,000.00 per acre, while the rear land, comprising 7.125 acres, had a value of only $500.00 per acre, or a total value of $3,563.00. On that basis, he appraised the 5.12 acres taken by plaintiff at $62,890.00, since it consisted mostly of "front land," and he valued the remainder at $9,173.00.
In re-appraising the property as a subdivision, Willet concluded that the division of the parent tract into streets and relatively small lots reduced its value. He felt that the lots were too small to serve any industrial or commercial purpose, that it would be necessary for the dedication of the two streets to be revoked in order to get the best use of the property, and that a prospective purchaser might have some difficulty in getting such a revocation. Willet estimated the value of all 20 lots in the subdivision at $49,228.00. He felt that the lots fronting on the highway, being 130 feet deep, had a value of $50.00 per front foot, or 38 per square foot, while the other lots had a value of only 7.7¢ per square foot. On the basis, he valued the three parcels taken by plaintiff at $32,900.00.
Perry E. Futtrell, Jr., another real estate expert, appraised the property for plaintiff, and his report was submitted in evidence. He estimated the value of the parent tract at $65,200.00 before it was subdivided. He felt, like Willet, that the land fronting on the highway, to a depth of 200 feet, had a greater value than did the rear land. He valued the front land, containing 3.145 acres, at $90.00 per front foot, amounting to $61,650.00, and he valued the rear land, containing 7.125 acres, at $500.00 per acre, amounting to $3,563.00. Based on this "front land-rear land" concept, he concluded that the value of the property taken was $56,715.00, and that defendants suffered no severance damages.
Futtrell re-appraised the property later as "subdivision property," and he concluded that as subdivided the entire parent tract had a value of only $60,978.00. He felt that the lots fronting on the highway were worth more than the rear lots, and according to his computations the value of the property, computed as a subdivision, was $39,335.00.
Donald L. Chambers, a real estate expert called by defendants, appraised the property only as a subdivision. He concluded that the total value of all of the lots would be $160,768.00 when the subdivision was completed. He then estimated the cost of developing the subdivision, and after deducting those costs he concluded that the entire parent tract had a net value of $143,461.60. He estimated the value of the "front land," to a depth of 180 feet from the highway, at 61¢ per square foot, or a total of $60,968.00, and he valued all other land in the subdivision at 30½¢ per square foot. Using these valuations, he concluded that the three parcels of land taken by plaintiff had a value of $86,449.64 or $82,630.41, there being some confusion as to how much should be deducted for development costs.
W. C. Webb, a realtor called by defendants, also valued the property as a subdivision. He concluded that the lots in the subdivision had a value of $181,088.00 before the taking, that the property fronting on the highway was worth substantially more than the rear property, and that the property taken had a value of $105,563.00.
Defendant Monsur, who is an experienced real estate appraiser as well as a defendant in this suit, felt that the lots fronting on the highway, to a depth of 130 feet, had a value of $80.00 per front foot, and that the back lots had a value of $55.00 per front foot. On that basis, he felt that the value of the property taken was $78,718.00, and that he sustained severance damages *166 of $5,814.00, entitling him to a total award of $84,532.00.
The trial judge, obviously concluding that the land taken should be appraised as subdivision property, concluded that if the development of the parent tract into a subdivision should be completed the lots which faced on the highway would have a value of $65.00 per front foot, and that the rear lots would have a value of $50.00 per front foot. After computing the ultimate value of the developed property on that basis, he then deducted the estimated cost of developing each lot in the subdivision, and concluded that the value of the property taken and severance damages amounted to $70,809.00. Judgment accordingly was rendered condemning plaintiff to pay defendants that amount, less the sum previously deposited in the registry of the court.
We have concluded that the trial judge erred in valuing the subject property as a subdivision, in speculating as to the future value of lots if the development of the subdivision is completed, and in holding that the "front land" had a greater value than did the "rear land."
The law is settled that if the potential use of property for subdivision purposes is remote or speculative, or if its use for that purpose would require the concurrence of so many extrinsic conditions or happenings that it would have no effect on the present market value, then the property should not be valued for expropriation purposes on a per lot or square foot basis, as being subdivision property, but instead it should be valued as a unit. On the other hand, if the potential use of the property for subdivision purposes is reasonably prospective, as distinguished from remotely prospective, so as to remove its potential use or classification as a subdivision from the realm of guess work, speculation and conjecture, then the property may properly be classified and valued as subdivision property. State, Through Department of Highways v. Mouledous, 200 So.2d 384 (La.App. 3 Cir. 1967); Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959).
While the evidence in this case shows that the highest and best use of defendants' property is for industrial or commercial purposes, the property has never been used for anything except for farming, and there has been no commercial or industrial development in that immediate vicinity. It is true that defendants have filed a plat subdividing the property into small lots, and they have "ditched in" two dirt streets, but that is all that has been done to the property in the way of developing it.
Defendants were aware of the fact that a substantial portion of this property might be expropriated for highway purposes when they bought the parent tract on February 6, 1969. Defendant Monsur concedes that he and Daspit talked to Mrs. Genova about "the road" when they bought the property, and that Mrs. Genova told them, "they have been talking about building this highway for twenty years and I don't want to bother with it, I want to go ahead and sell it." If defendants had any doubts at that time as to the plan of the state to expropriate a substantial part of this property, however, those doubts were removed a few days later, when the Department of Highways wrote to both defendants, sending them copies of the plat showing the portion of the 10.27 acre tract it proposed to expropriate, and stating:
"As shown on the attached plat, approximately one-half of this ten-acre tract is required for highway purposes, and you are hereby required to cease improvements to that portion required which may incur additional cost in public funds when the Department purchases the required area."
This letter was written on February 11, 1969, five days after defendants bought this property. It was sent by certified mail to each of the defendants, and the return receipts show that each received that letter and the plat on the following day, *167 February 12. The plat of the Renee Subdivision was filed on February 6, 1969, that being the same day on which the property was purchased, and although the record does not show when the two dirt streets were roughed in, we conclude that that was done before defendants received the above mentioned letter, because we do not believe that they would have proceeded to develop the property as a subdivision after they received such a formal notice from plaintiff. One of the real estate experts who testified at the trial estimated that the preparing and filing of the plat, and the cutting of the two streets, with all of the legal expenses which might have been involved, could not have amounted to more than $800.00.
Although the filing of the plat effectively subdivided the parent tract into lots, the question presented is whether the mere filing of that plat increased the market value of the property. We are convinced that it did not. The evidence shows that a great deal of work would have to be done and substantial expenses would have to be incurred in order to complete the development of a commercial and industrial subdivision. The experts disagree as to whether the subdivision of this property into small lots, with most of them cut off from any highway or railroad frontage, increases or decreases the value of the tract as a whole. There are no other commercial or industrial subdivisions in that vicinity, and the property is in a rural area. Even if the subdivision is completed, it is highly speculative as to whether any of the lots in it could be sold within a reasonable period of time for industrial or commercial purposes. Our conclusion, therefore, is that the potential use of the property for subdivision purposes is only remotely prospective, that the filing of the plat and the cutting of streets did not increase the value of any part of the parent tract, and that the property should be valued as a unit.
The case of State of Louisiana, Through Department of Highways v. Medica, 257 So.2d 450 (No. 3724 on our docket), involved the expropriation of a part of the 10 acre tract of land which is located immediately south of and adjoining the property affected by this suit. The parent tract in Medica was almost identical in size and in physical characteristics to the parent tract being valued here. Both pieces of land are located on the west side of U.S. Highway 71, they fronted on that highway, and they extend westward to the railroad right of way. About the same amount of property was taken from each tract, and the taking in both cases occurred at about the same time. The Medica case was tried just 15 days before this one was tried, and both cases were argued before us on the same day. Mr. Willet and Mr. Chambers testified as experts in both cases. Mr. Willet's testimony as to the value of the subject property here is consistent with the opinions he expressed in Medica. There is a substantial difference, however, between the values expressed by Mr. Chambers in the two cases.
Mr. Chambers valued the Medica 10 acre tract at $6,000.00 per acre, basing that appraisal on a finding that the adjacent Monsur-Daspit 10.27 acre tract, involved in this suit, had a value of $60,000.00, or about $6,000.00 per acre. He also testified in Medica that there was no difference in the values of the "front land" as compared to the "rear land," but that the average value of $6,000.00 per acre was applicable to all parts of that property. In the instant suit Chambers valued defendants' property at more than twice as much as he valued it in Medica, and he states here, contrary to the views he expressed in Medica, that the "front land" has a much higher value than does the "rear land." His principal explanation for these major inconsistencies was that he was asked to appraise only the "back land" for Medica, and that "one had been subdivided into a subdivision and the other was one whole tract." When asked why he did not consider as a prime comparable the February 6, 1969, sale of the same property which was being appraised, especially since he used it as the main comparable *168 in valuing the Medica tract, he explained, "Mr. Monsur is a developer and.... I don't think that there is anyone who is going to buy land for sixty thousand dollars and subdivide it and hope to just get sixty thousand dollars out of it, they would be foolish to do it, this is what they are in the business for...." The explanations given by this witness do not convince us that there should be such a great difference between the values of the Medica tract and the property involved in this suit, or that the "front land-rear land" concept should be applied here although it should not be, and was not, applied in Medica.
We think the sale of the parent tract to defendants on February 6, 1969, is the best evidence of the present market value of that property. Both of the expert witnesses called by plaintiff, however, placed a higher value on that entire tract when they appraised the property as a unit. In view of the fact that defendants have had the property subdivided and have done a small amount of dirt work on it, we have decided that the entire 10.27 acre parent tract had a value of $72,063.00, or $7,017.00 per acre, at the time of the taking, that being the total value placed on that entire tract by Mr. Willet.
In the Medica case we determined that the "front land" should not be valued higher than the "rear land," but that all of the property, wherever located within the parent tract, should be valued at the same amount per acre. For the reasons which we assigned in that case, we conclude that the "front land-rear land" concept is not applicable here.
Although the property taken here is described as being three separate parcels, the area taken is equivalent to 5.12 acres out of the 10.27 acre parent tract. According to our computations, the parcels taken had a value of $35,927.00. The same figure would result if we should compute the value per square foot of the entire subdivision and award defendants the amount due per square foot for the parcels actually taken. We conclude that defendants are entitled to an award of $35,927.00 for the property taken.
A small part of Lot 20, located in the southeast corner of defendants' parent tract, remains after the taking. This remaining tract has a frontage of 150 feet on old U.S. Highway 71, and it also will front on the new highway when that thoroughfare is constructed. This remaining property is so small and so irregular in shape, however, that its value is substantially reduced. The trial judge determined that the severance damages to this remaining parcel of land amounted to $2,949.00, and we will not disturb that finding.
The trial judge also found that the property remaining to defendants, located west of the land being taken, sustained severance damages of $974.00. We agree that this remaining tract will sustain very little damage as a result of the taking. It will continue to have frontage on the new highway and on the railroad right of way. Since it will be irregular in shape, however, we cannot say that the trial judge erred in awarding $974.00 as severance damages to this tract.
Our ultimate conclusion is that defendants are entitled to an award of $35,927.00 for the property taken, plus severance damages in the sum of $3,923.00, making a total award of $39,850.00.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount of the award made to defendants from $70,809.00 to the sum of $39,850.00, subject to a credit for the amount deposited in the registry of the court by plaintiff. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.
*169