269 So.2d 480 (1972)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Lulu Stephens STEGEMANN, Defendant-Appellee.
No. 3969.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1972.
Rehearing Denied December 6, 1972.
Writ Refused January 25, 1973.
*481 Johnie E. Branch, Jr., and Jerry F. Davis, Asst. to Gen. Counsel, La. Dept. of Highways, Baton Rouge, for plaintiff-appellant.
Pharis & Pharis by F. Jean Pharis, Alexandria, for defendant-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
FRUGÉ, Judge.
Plaintiff Highway Department expropriated a strip of defendant's land approximately 116.5 feet deep fronting 140.91 feet on Louisiana Highway 1 in Alexandria pursuant to the provisions of the Quick Taking Statute, LSA-R.S. 48:441-460, and deposited $20,876.00 in the registry of the court as just compensation. The defendant, Mrs. Lulu Stephens Stegemann, withdrew the deposit and answered, requesting an increase in compensation to $40,038.00. The tract remaining after the taking was an average of 372 feet deep from the new right of way line. Taken were 16,352.3 square feet; remaining were 56,918.7 square feet. The improvements taken included a brick veneer residence, fencing, paving, and driveway. The trial court awarded judgment for $33,318.72 ($9,220.42 for the land taken, and $24,098.30 for improvements taken), and taxed as costs the witness' fees of each of the defendant's appraisers, which he set at $1,300.00 each. The Department of Highways appealed the judgment requesting a reduction in the award.
The Department urges that the trial court made the following errors in its determination of the case:
(1) The trial court utilized the front land-rear land concept instead of the average unit price concept to determine the value of the land taken;
(2) It made an inadvertent mathematical error in computing the area of the tract taken;
(3) It accepted the estimate of defendant's appraiser to the exclusion of other experts, particularly regarding the depreciated value of the improvements;
(4) It awarded defendant's appraiser excessive witness fees.
The Department contends that the front land-rear land rule has not been followed, and that there has been a return to the average unit value concept in State through Department of Highways v. Medica, 257 So.2d 450 (La.App.3rd Cir., 1972); State through Department of Highways v. Medica, 257 So.2d 454 (La.App. 3rd Cir., 1972); and State through Department of Highways v. Monsur, 258 So.2d 162 (La. App. 3rd Cir., 1972), rehearing denied 1972. In so arguing, it assumes that "front land-rear land" and "average unit price" are ironclad rules of law and that one is right and one is wrong. It ignores the fact that "front land-rear land" and "average unit price" are mere short-hand appellations for different fact situations in which the same principles of valuation are applied.
A landowner is always entitled to the fair market value of the land actually taken. State through Department of Highways v. Smith (La.App. 3rd Cir., 1972), our Docket Number 3929; State through Department of Highways v. Landry, La.App., 171 So.2d 779, writ refused 247 La. 676, 173 So.2d 541.
The fair market value of the front land in certain situations is higher than the *482 average unit price of the tract. The fact that adjacent areas of land which have different highest and best uses are all under the same ownership, and together compose a large ownership tract, does not presuppose that they would be developed or marketed as a single tract. In fact, market realities dictate otherwise. An owner ordinarily will sell a portion of his property for the highest price the market will deliver so long as that use does not damage the value of the remainder. This jurisdiction has long recognized that different portions of an ownership tract any have different highest and best uses and, thus, different per unit values. In Green v. Board of Com'rs., 163 La. 117, 111 So. 619 (1927), a case involving the appropriation of a levee servitude for its assessed value under La. Const. 1921 art. 16, § 6, our Supreme Court recognized that value is not distributed evenly throughout ownership tracts:
"But in our opinion it is not a mere matter of arithmetic. It is quite true that the total value of the whole land must be taken to be its assessed value; but it does not follow that each acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract.
"On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values."
In Louisiana Highway Commission v. Guidry (two cases), 176 La. 389, 146 So. 1 (1933), the Supreme Court granted an award of $150.00 an acre for land which was higher and better than the defendant's other land when the average per acre value of the plantation was $100.00. In this case, the Highway Department had expropriated defendant's highest and best land for a new highway instead of the lower land on either side of the ridge. The defendant had been using the land for sugar farming, and the increased award was allowed merely because the higher land was better for farming and not because it had a different highest and best use. Since then, the Supreme Court, in a case dealing with the expropriation of farm land near Shreveport for a new highway, acknowledged that land "fronting on the new highway could be sold more readily and at must higher prices than parcels of like acreage could be sold under present conditions." Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941).
The Courts of Appeal have not hesitated to recognize that different parts of the same ownership tract may have different values and to determine the compensation for the land taken as a proportion of the value of the use tract of which it is a part. In some instances, particularly where the land taken was desirable commercial frontage on a heavily traveled thoroughfare, this has resulted in compensation to the landowner in a higher amount than if the award were computed as a proportion of the value of the entire ownership tract. State through Department of Highways v. Spera (La.App. 3rd Cir., 1972); State through Department of Highways v. Smith (La.App. 3rd Cir., 1972); State through Department of Highways v. Mayer, 257 So.2d 723 (La.App. 1st Cir., 1971), writs refused 261 La. 461, 259 So.2d 913 (1972); Gulf States Utilities Company v. Norman, 183 So.2d 421 (La.App. 3rd Cir., 1966), writs refused 249 La. 118, 185 So.2d 529 (1966); State through Department of *483 Highways v. Moyse, 151 So.2d 149 (La. App. 1st Cir., 1963); State through Department of Highways v. Caillier, 157 So. 2d 274 (La.App. 3rd Cir. 1963), certiorari denied 245 La. 572, 159 So.2d 285 (1964); State through Department of Highways v. Barnard, 130 So.2d 151 (La.App. 2nd Cir., 1961); and Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286 (1932). In other instances, the award for the part taken was less than if the award had been computed as a proportion of the value of the entire ownership tract. Parish of East Baton Rouge v. Stipe, 231 So.2d 665 (La.App. 1st Cir., 1970); writs refused 255 La. 918, 233 So.2d 565 (1970); Texas Gas Transmission Corp. v. C. M. Thibodeaux Co., 148 So.2d 337 (La.App. 1st Cir., 1962). Certiorari was denied in nearly all cases in which the Court of Appeal found multiple use tracts in one ownership tract and valued the land taken accordingly. In one case, however, the Supreme Court objected to the result. State through Department of Highways v. Rapier, 152 So.2d 272 (La.App. 1st Cir., 1963), certiorari granted 244 La. 674, 153 So.2d 885 (1963). The Supreme Court amended the judgment not because it disagreed with the First Circuit's statement of the law, State through Department of Highways v. Rapier, 246 La. 150, 164 So. 2d 280, 282 (1964); rather it overruled the appellate court's finding of fact. There it found that the highest and best use of the entire tract was residential subdivision. It did not agree that one portion of the tract had a highest and best use for residential subdivision purposes, and another portion for light industrial. (Id at 164 So.2d 282).
Upon questioning at oral argument, counsel for the Department admitted that the Medica and Monsur cases, supra., do not overrule the principles espoused by this Court in State through Department of Highways v. Landry, 171 So.2d 779 (La. App.3rd Cir., 1965), writs refused 247 La. 676, 173 So.2d 541 (1965). We agree. In fact, based upon the facts of these cases we find their results compatible. The tracts involved in the Medica cases and the Monsur case were adjacent to each other on the same highway near Alexandria. In all three cases, although the tracts in question fronted on a highway, they were rural lands which had been used for farming. Their highest and best use was not commercial as was the tract's highest and best use in Landry. In Monsur, 258 So.2d 162, at page 166, this court rejected the contention that the highest and best use of the tract in question was for commercial and industrial or for subdivision purposes. Although we do not agree with language in Medica implying that the only factor which affects the highest and best use of a tract is its physical characteristics, we think the conclusion that "[t]he 10-acre parent tract involved in the instant suit [Medica] did not consist of different classes of land" was correct. There the market value of the land taken was said to be a proportion of the value of the use tract of which it was a part. State through Department of Highways v. Medica, 257 So.2d 450, 453 (La.App. 3rd Cir., 1972). See also: State through Department of Highways v. Monsur, 258 So.2d 162, 168 (La.App. 3rd Cir., 1972). In these cases, the ownership tracts each included only one use tract or class of land.
In Landry, supra., the evidence disclosed that the ownership tract was composed of two classes of land, each with a different highest and best use, and thus a different per unit value. The front use tract from which the land was taken was a 150-foot deep strip of land ideally situated for commercial uses, and the value of the land taken was said to be a proportion of that tract. Thus, in Landry also, the value of the part taken was determined to be a proportion of the value of the use tract of which it was a part. State through, Department of Highways v. Landry, 171 So. 2d 779 (La.App.3rd Cir., 1965).
In the case before us today, the property taken is on Louisiana Highway 1 between Alexandria and England Air Force Base. All of the appraisers testifying at the trial, including the Department's *484 appraisers, stated that the highest and best use of the 200-foot strip adjacent to the highway was commercial and, therefore, more valuable than the other class of land in the ownership tract. Accordingly, we find that the trial judge correctly computed the value of the part taken as a proportion of the value of the 200-foot deep strip bordering Louisiana Highway 1, the use tract of which the land taken was a part.
The Department's second basis for urging that the "average unit value method" should be used is that the defendant's pecuniary loss is not as great as the value of the land taken because he ended up with the same amount of commercially usable land after the taking as before. In Landry, supra., the Department urged that the benefit to the remainder of the ownership tract resulting from the taking be offset against the true market value of the part actually taken. We there rejected that argument because the statute under which the Department was operating prohibited offsets of benefits to the remainder of the parent tract against the fair market value of the land actually taken. LSA-R.S. 48:453, LSA-R.S. 19:9. See also: R.C.C. Article 2633.
Here, in an effort to circumvent Landry, counsel for the Department stated on oral argument that he was not claiming any enhancement in the remaining property but contending that the landowner was not hurt because he owned depth. He argued that the landowner's commercial frontage is merely moved back 116 feet, i. e., that the commercial land taken for the highway is replaced by once rear portions of the tract that have now become commercial because of closer proximity to the road. The Department contends that the landowner's pecuniary loss may be determined by finding a total value for the entire ownership tract considering the highest and best use of each portion and then multiplying an average per unit value by the acreage lost. This is no doubt, an accurate computation of the landowner's pecuniary loss. Assuming frontage with a commercial highest and best use and no severance damages, where a landowner owns a tract sufficiently deep that he ends up with as much commercial frontage after the taking as before the taking, his damages are often less than the fair market value of the land taken.
The distinction between compensation for the land taken and compensation for damages caused by the taking has long been recognized in this jurisdiction.
"As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is the diminution in the value of the property." McMahon v. St. Louis, A. & T. R. Co., 41 La.Ann. 827, 830, 6 So. 640, 641 (1889).
Unlike some jurisdictions which, through setoffs of benefits against both damages and the value of the land, compensate the landowner only for the pecuniary loss caused by the taking (See 3 Nichols on Eminent Domain, Sections 86206, 86211), Louisiana courts must insure that landowner receives the value of the property actually taken as well as any damages he may have suffered. State through Department of Highways v. Landry, La.App., 171 So.2d 779, writ refused 247 La. 676, 173 So.2d 541; State through Department of Highways v. Smith (La.App. 3rd Cir., 1972). We consider the jurisprudence on this point well settled. However, because of the Department's insistence that this position is wrong, we will take the issue as their argument has framed it: Is a landowner in an expropriation action entitled to at least the fair market value of the land taken even though he may be damaged to a lesser extent by the taking?
The factors which created this paradox were not before the redactors of R.C.C. Article 2633 (1870), and the authors of LSA-R.S. 19:9 (1950) were working 15 years before the problem became apparent in our jurisprudence. Thus, they could not *485 envision a situation in which damages were less than the fair market value of the land taken. When they prohibited setoffs of benefits against the fair market value of the land taken, they were guarding the landowner from the only threat which they could envision to his right to at least the fair market value of the land taken. Had they envisioned the situation before us today, they would surely have specifically applied this fundamental principle to it in their work.
We also feel that this principle is evident from the jurisprudence of the Supreme Court. In Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941), the same factors which cause the paradox before us caused an increase in the value of the defendant's remaining land after a taking for a new road. There the Supreme Court found that the benefit to the remainder was so great that the severance damages suffered by the tract were completely offset. Although the court had before it a new project instead of widening of an existing highway, we find it significant that it did not even consider offsetting the enhancement in value against the compensation for the land taken. More recently in State through Department of Highways v. Vermilion Develop. Co., 258 La. 1159, 249 So.2d 167 (1971), the Supreme Court again espoused the principle that a landowner is entitled to the fair market value of the property taken:
"Whatever the standard, statutory or jurisprudential, it must comply with the requirements of the Constitution of the State of Louisiana. (Quotations of Article 1 § 2, and Article 4 § 15 of the Louisiana Constitution omitted).
"Consequently, the measure of compensation for the taking of the houses is their market value at the time of taking, and not the "salvage value" as found by the Court of Appeal." (p. 173).
Louisiana Power & Light Company v. Lasseigne, 256 La. 919, 240 So.2d 707 (1970), involved an analogous situation to the one before us although the issue was framed differently. The plaintiff had an existing right-of-way across defendant Lasseigne's land. It desired to expropriate another more convenient right-of-way across a different section of Lasseigne's land. The plaintiff attempted to release and extinguish the existing right-of-way in full consideration and payment for the new right-of-way (just as the Highway Department here seeks to extinguish part of its obligation to pay the market value of the land taken because it is replaced by new commercial frontage). See: Louisiana Power & Light Company v. Lasseigne, 220 So.2d 462 (La.App.4th Cir., 1969). There the issue was framed in the context of whether the Constitution requires the price for the land taken to be paid in money. The Fourth Circuit held that the value of the old right-of-way could not be set off against the price of the new right-of-way.
In affirming, the Supreme Court stated:
"As we understand this issue, defendants take the position that plaintiff's offer to acquire the new servitude by a voluntary transaction did not include a fair "price" as contemplated in Section 2 of Title 19 of the Revised Statutes because the offer required that plaintiff receive credit on the price for the value of the existing servitude it would abandon. "Price", as used in the statute, it is argued, is money and not benefits derived by adjoining property as a result of the expropriation such as the abandonment of a servitude. This contention is well-founded.
"Compensation for taking property by expropriation must be a "price" in money. U.S.Const. Amend. V; La.Const. art. 1 § 2; La.Civil Code arts. 497, 2633-2634. Special benefits resulting from the taking under the statute in question may be set off from the damages to the remaining land but not from the value of the land taken." Louisiana Power & Light Company v. Lasseigne, 256 La. 919, 240 So.2d 707, 710 (1970). *486 We, therefore, conclude that the principle is firmly entrenched in the Constitution, statutes, and jurisprudence applicable to this case that a landowner is entitled to demand at least the fair market value of the property taken in money from an expropriating authority. We apply that principle today.
The trial judge made an inadvertent error in computing the area of the taken tract. That the correct area of the taken tract is 16,352.3 square feet instead of 16,754.4 square feet is undisputed. Accordingly, the award of the trial court will be amended to correct the $226.65 excess award.
We can understand the trial court's giving the estimate of defendant's appraiser, Mr. Monsur, more weight than the estimate of plaintiff's appraisers. The Department had instructed its appraisers to appraise the land on the basis of the "average unit value method". Their appraisal was based on a highest and best use for residential purposes. At the trial, the Department's appraisers admitted that the highest and best use of the property was commercial and that the "average unit value method" was the incorrect method to use. Mr. Willet testified that he believed that the land fronting the highway was more valuable than that in the rear of the tract. At the Department's request, its experts appraised the property using two additional methods in preparation for trial. At the trial, Mr. Willet admitted that appraising the part taken as an entity would not result in "fair compensation" and was unrealistic. The trial court's thorough questioning in relation to the third method revealed that it was indefensible and required the utilization of a plug figure. Although nothing at the trial court level could estop the Department's arguing the position of its appraisers before this court, we do find its position on this issue interesting in light of its objecting to cross examination of Mr. Willet on the ground that he had been instructed to value the part taken on an average unit value basis and "had no legal right to testify otherwise."
The expert valuations of plaintiff's expert, Mr. Willet, and defendant's expert, Mr. Monsur, for improvements were virtually the same except for depreciation allowed. The Department objects to the trial court's using Mr. Monsur's depreciation estimate instead of Mr. Willet's. Mr. Monsur's experience in the building trade is extensive while Mr. Willet's experience is minimal. There is no manifest error in the acceptance of Monsur's depreciation estimate. His explanation of it on a cost to cure basis was reasonable and realistic. State through Department of Highways v. Spera (La.App. 3rd Cir., 1972).
The Department contends that the $1,300.00 expert fee awarded to landowner's expert is excessive. The fixing of expert fees rests mainly within the sound discretion of the trial court. State through Department of Highways v. Smith (our docket number 3929) (La.App.3rd Cir., 1972); Columbia Gulf Transmission Company v. Fontenot, 187 So.2d 455 (La.App. 3rd Cir., 1966), writs refused 249 La. 717, 190 So.2d 234 (1966). While an agreement between an expert witness and one of the parties to a suit is no criterion to be used alone by the trial court in fixing expert fees when the fees are not reasonable or commensurate with the work performed by the expert, State through Department of Highways v. Donner Corporation, 236 So.2d 841 (La.App. 3rd Cir., 1970), where the evidence supports the trial judge's conclusion that the fees agreed upon between the expert witness and the party to the suit are reasonable and commensurate with the amount of work done by the expert, the award will not be upset on appeal. State through Department of Highways v. Spera (our docket number 3971) (La.App. 3rd Cir., 1972). The defendant's appraisers visited the site, took pictures, studied the site closely and appraised the property under both the market comparison method and the reproduction cost method. They produced and studied plans for the building taken. In obtaining comparable sales for the market comparison method, they even investigated the background of the comparables *487 and, in several instances, discovered that the true consideration paid for the comparables was not as reflected on the public records. They appeared in court on two separate occasions. We find no abuse of the trial court's discretion in setting the expert fees at $1,300.00.
For the foregoing reasons, the judgment is amended to reduce the award to defendant by $226.65. We affirm the judgment of the trial court in all other respects. Costs of this appeal are assessed to appellant.
Amended and affirmed.