272 So.2d 768 (1972)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
James P. HOYT, Jr., et al., Defendants-Appellants.
No. 4039.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1972.
Concurring and Dissenting Opinion Filed January 24, 1973.
Rehearing Denied February 1, 1973.
Writ Granted March 15, 1973.
*769 Pharis & Pharis by F. Jean Pharis, Alexandria, for defendants-appellants.
Golden Mills, Johnie E. Branch, Jr., Jerry F. Davis by Jerry F. Davis, Baton Rouge, Edward Kaplan, Alexandria, for plaintiff-appellee.
Before SAVOY, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
This is an expropriation suit instituted under LSA-R.S. 48:441-460 by the State of Louisiana, through the Department of Highways, against Mr. and Mrs. James P. Hoyt, Jr. Plaintiff deposited $46,200.00 as its estimate of just compensation. The deposit was intended to include $13,200.00 as the value of the land, and $33,000.00 as the value of the improvements taken. Defendants answered, alleging that the land and improvements taken were worth substantially more than the amount deposited, and that the remaining property was damaged as a result of the taking.
The trial judge concluded that the land taken had a value of $13,600.00, that the improvements taken were worth $38,000.00, and that defendants sustained no severance damages as a result of the taking. Judgment thus was rendered awarding defendants $51,600.00 for the property and improvements taken, subject to a credit of the $46,200.00 deposited by plaintiff. The court fixed the fees of the two expert appraisers called by defendants at $600.00 each. Defendants appealed.
The issues presented on this appeal are whether the awards made to defendants for the land and improvements taken should be increased, whether the court *770 erred in refusing to award severance damages, and whether the fees fixed for the two appraisers called by defendants should be raised.
The property expropriated by plaintiff is an "L" shaped tract of land, comprising 0.330 acre, being a part of a 0.925 acre tract owned by defendants. The parent tract owned by defendants, comprising a little less than one acre, was almost square in shape, and was located on Louisiana Highway One, near the City of Alexandria, in Rapides Parish. At the time of the taking Highway One was a two-lane, blacktopped highway, running generally east and west. The property being expropriated from defendants is to be used by plaintiff to widen and improve Highway One, and to convert it into a concrete, four-lane, divided highway. Defendants will continue to have access to the improved highway, as they did to the old one.
When this suit was instituted, defendants' parent tract was bounded on the north by Louisiana Highway One, on the east by Woodland Drive, and on the south by Orleans Drive, a dedicated but as of that time an unopened street. It had frontage on Highway One of about 200 feet, with an average depth of about 210 feet. A service station was located on the parent tract at the time of the taking, and all of the real estate experts who testified agreed that the highest and best use of the property was for highway commercial purposes. The physical characteristics of the parent tract were uniform throughout, and no part of the property was affected by zoning restrictions.
The part of the property which was taken consisted of the entire 200 foot frontage of that tract on Highway One. 185 feet of that frontage property extended from the highway rearward to an average depth of about 69 feet. The remaining 15 feet of the frontage property taken, the eastern most part of it, extended from the highway rearward a distance of about 137 feet. The part taken comprised 0.330 acre, or about 35.7 percent of defendants' parent tract. After the taking defendants' remaining property will consist of 0.595 acre, or 64.3 percent of their original parent tract. When the widening and improving of Highway One has been completed, their remaining property will have a frontage of 185 feet on that highway, by an average depth of about 141 feet. It will continue to have direct access to the new and improved Highway One, to Woodland Drive and to Orleans Drive, as did the parent tract.
Two expert appraisers testified in behalf of plaintiff, and two such experts were called by defendants.
Darrell V. Willet, one of the appraisers called by the Highway Department, valued defendants' 0.925 acre parent tract, exclusive of improvements, at $38,120.00 at the time of the taking. He determined that this amounted to a value of $41,211.00 per acre for the whole tract. Since the area being expropriated comprised 0.330 acre, he concluded that at the time of the taking the land expropriated had a value of $13,600.00, and that defendants' remaining property, comprising 0.595 acre, had a value of $24,520.00.
T. J. Toups, the other appraiser called by plaintiff, valued the entire parent tract at $36,866.00. He then took the number of square feet in that tract, and by mathematical computations he determined that it had a market value of $0.875 per square foot at the time of the taking. Using this value per square foot, he concluded that the 0.330 acre tract of land taken in this proceeding had a value of $13,193.00, and that defendants' remaining property was worth $23,673.00.
Both of the appraisers for plaintiff, therefore, used the "average land basis rule" in determining the value of the property taken. Each of them found that the value of the land taken bears the same proportion to the total value of the parent tract as the area taken bears to the total area of that tract.
*771 Habeeb Monsur, Jr., an expert called by defendants, appraised the entire parent tract at $40,000.00, but he placed a substantially higher value on the front land than he did on the rear land. He valued the 0.330 acre of front land taken by plaintiff at $25,750.44, and he valued the remaining 0.595 acre of rear land at only $14,250.00.
W. C. Webb, the other appraiser called by defendants, valued the entire parent tract at $45,000.00, but he, like Monsur, felt that the front land should be valued at a higher figure than the rear land. In his opinion, the 0.330 acre of front land taken by plaintiff had a value of $26,125.00, and the remaining 0.595 acre of rear land had a value of only $18,875.00.
The two appraisers called by defendants, therefore, used the "front landrear land rule" in determining the value of the property taken in this proceeding.
The trial judge rejected the appraisals made by defendants' experts, based on the "front landrear land rule." Instead, he accepted the appraisal made by Mr. Willet, one of the experts called by plaintiff, who used the "average land basis rule" in determining the value of the land taken. He concluded that the entire parent tract had a value of $38,120.00 before the taking, and that the 0.330 acre tract taken had a value of $13,600.00. Judgment thus was rendered awarding defendants the sum of $13,600.00 for the land taken, plus the additional sum of $38,000.00 for the improvements.
We think the applicable law was correctly stated in State, Department of Highways v. Joseph K. Medica, 257 So.2d 450 (La.App. 3 Cir. 1972), as follows:
"In expropriation suits, where the property affected is composed of different classes of land, with each class having different physical characteristics, each such class may be appraised separately, and the value of the property taken may be computed on the basis of the appraisals made of the various classes of property. Where the affected property is not composed of different classes of land, however, then it should be appraised as a unit, or on a per acre or square foot basis, and if there is a partial taking of the value of the part taken should bear the same proportion to the total value as the area taken bears to the total area included in the parent tract. If the remaining property sustains a decrease in value as a result of the taking, of course, the owner is entitled to severance damages in addition to the value of the property taken." (Emphasis added).
In the instant suit defendants' parent tract had the same physical characteristics throughout. No part of it was substantially more wooded or more elevated than any other part, and the tract was not separated by streets, streams or other similar dividing lines. Neither was it divided by zoning restrictions. The parent tract thus was not composed of different classes of land, which could be appraised separately for expropriation purposes. The trial judge correctly recognized that under those circumstances the parent tract should be valued as a whole, that the per acre or per square foot value of that tract should then be computed, and that the award for the part taken should bear the same proportion to the value of the whole as the area taken bears to the total area of the parent tract. See State, Department of Highways v. Joseph J. Medica, supra; State, Department of Highways v. Paul N. Medica, 257 So.2d 454 (La.App. 3 Cir. 1972); State, Department of Highways v. Monsur, 258 So.2d 162 (La.App. 3 Cir. 1972); State, Department of Highways v. Waterbury, 171 So.2d 790 (La.App. 3 Cir. 1965); Texas Gas Transmission Corp. v. C. M. Thibodeaux Co., 148 So.2d 337 (La.App. 1 Cir. 1962).
We realize that the "front land-rear land rule" has been applied in a few instances by other panels of this court, and that in those cases the front land (to an arbitrarily fixed depth) was given a substantially higher value than the rear land, although *772 the parent tract was not composed of different classes of land. See State, Department of Highways v. Landry, 171 So.2d 779 (La.App. 3 Cir. 1965); State, Department of Highways v. Smith, La.App., 272 So.2d 746. We, however, do not feel that that concept of valuing property in expropriation cases is consistent with the provisions of our expropriation laws. With due respect to our colleagues, therefore, we prefer to follow what we consider to be the sounder views expressed in the Medica and Monsur cases, supra.
Our conclusion is that the trial court was correct in accepting the appraisal made by defendants' `appraiser, Willet, who used the "average land basis rule," and in awarding defendants $13,600.00 for the land taken.
There was a substantial difference in the values placed by the various experts on the improvements taken. Willet and Toups valued the improvements at $38,000.00 and $37,598.00, respectively. Monsur and Webb both valued the improvements taken at $53,151.00.
The improvements included the service station building located on the property taken, and the fixtures and equipment used in the business which were taken or destroyed. Willet and Toups valued the building and each fixture and item of equipment taken. They made a detailed inventory of the equipment which was included in the taking. Monsur and Webb valued the building, and they added to that figure a sum which they estimated to be the value of the equipment taken. They arrived at that estimate by obtaining from Phillips Petroleum Company a "cost estimate" of the equipment which it supposedly installed in the station in 1961. From that estimate they deducted the fixtures which had been furnished by the contractor, such as concrete driveways, and they used the remaining 1961 cost figure as the present value of the fixtures and equipment. Monsur explained that he assumed that the fixtures were still there, and that he allowed nothing for depreciation of ten or more years because he felt that depreciation had been offset by inflation. The trial judge observed, correctly, that the "cost estimate" used by Monsur and Webb included items for which recovery could not be had, such as moveable properties, shelving displays and freight charges.
We find no error in the decision of the trial judge to accept the value placed on the fixtures and equipment by plaintiff's expert, Willet. We agree that the fixtures and equipment taken had a value of $38,000.00.
We turn now to the question of whether the trial judge erred in refusing to award severance damages to defendants.
Our jurisprudence is settled that the severance damage allowable as the result of an expropriation is the difference between the market value of the remaining property immediately before and immediately after the taking. State v. Gani, 138 So.2d 683 (La.App. 3 Cir. 1962); State v. O'Neal, 149 So.2d 421 (La.App. 3 Cir. 1963); City of Shreveport v. Worley, 240 La. 117, 121 So.2d 506 (1960); State v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261 (1960).
Willet determined that defendants' remaining property, comprising 0.595 acre, had a value of $24,520.00 before the taking, and that it had a value of $24,990.00 after the expropriation. Toups valued defendants' remaining property at $23,673.00 before the taking, and he concluded that it had exactly the same value after the expropriation. Both of the appraisers called by plaintiff, therefore, were of the opinion that defendants suffered no severance damages as a result of the taking.
Monsur valued defendants' remaining property before the taking at $14,250.00. He felt, however, that it lost 50 percent of its value as a result of the taking, and he thus concluded that defendants had suffered severance damages in the amount of $7,125.00. Webb valued the remaining *773 property before the taking at $18,875.00. In his opinion defendants sustained severance damages of 60 percent of that figure, or $11,325.00.
Monsur concluded that defendants' remaining property was damaged for two reasons: (1) The taking and the construction of the proposed improvements caused a diversion of traffic from defendants' remaining property; and (2) the taking resulted in a loss or substantial reduction of access to the remaining property. Webb did not testify, but his report was filed in evidence, and it was stipulated that his testimony as to values, etc., would be the same as that of Monsur.
We have observed earlier in this opinion that plaintiff plans to convert Highway One into a concrete, four-lane divided thoroughfare. There will be a 32 foot median between the eastbound and westbound lanes, and this median will be constructed with stacking lanes, so that vehicles can pull out of the main traffic lanes preparatory to making left turns. Defendants' remaining property will abut the eastbound lane of that divided highway, that being the lane which bears traffic going into Alexandria. Monsur contends that the construction of this divided highway diverts the westbound traffic from defendants' property, and that this diversion of traffic results in a loss of value to defendants.
Our jurisprudence is settled that a mere diversion of traffic by reason of the establishment of a new highway or a new traffic route does not constitute a compensable injury to the owner of property abutting on the old way or route, where reasonable access to his premises is not impaired. Jarnagin v. Louisiana Highway Commission, 5 So.2d 660 (La.App. 2 Cir. 1942); State v. Lewis, 142 So.2d 652 (La.App. 1 Cir. 1962); Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572 (1957); Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885 (1956); Hebert v. State, Department of Highways, 238 So.2d 372 (La. App. 3 Cir. 1970). Defendants thus are not entitled to recover severance damages because of the alleged diversion of traffic.
Aside from the fact that severance damages are not allowable for mere diversion of traffic, we are not convinced that any damaging diversion of traffic has occurred or will occur in this case. Willet pointed out, with considerable logic we think, that if the divided highway actually deters westbound motorists (those traveling away from the nearby City of Alexandria) from crossing to a service station on the south side of the highway, then defendants will "enjoy more possession of your inbound traffic that's going to have a harder time going to competitors that you might have on the opposite side of the highway."
The loss or impairment of access to the remaining property is a proper element of severance damages, if that loss or impairment of access is substantial and causes the remaining property to be diminished in value. State, Department of Highways v. Hunt, 219 So.2d 602 (La.App. 1 Cir. 1969); Hebert v. State, Department of Highways, supra; Cucurullo v. City of New Orleans, 229 La. 463, 86 So.2d 103 (1956); Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616 (1953).
In the instant suit defendants will continue to have access to the new and improved highway. The construction plans call for the Highway Department to construct two driveways connecting defendants' remaining property with the eastbound traffic lane of the new four-lane divided highway. These two driveways will be located at angles so that eastbound motorists can easily drive on the property by using one such driveway, and they can leave the property easily by means of the other driveway. Each of these driveways will be 30 feet wide, measured straight across, but since it joins defendants' property at an angle, each such driveway will be 35 feet wide at the point where it will abut defendants' remaining property. The two eastbound traffic lanes of the highway *774 have a total width of only 24 feet, so the driveways are substantially wider than that part of the highway. In addition to these two very wide driveways, however, the Highway Department also plans to construct another driveway on the east side of defendants' property, providing free access to Woodland Drive, with a 24 inch culvert under that driveway.
Monsur and defendant Hoyt contend that large trucks will not be able to enter and leave a service station constructed on the remaining land by means of these driveways, since they are only 15 feet apart at the points where they join defendants' remaining tract of land. Hoyt concedes, however, that large trucks could enter the property by one of the driveways leading from the highway and then could exit from the property on Woodland Drive. In any event, Monsur and Hoyt feel that if a new service station were to be constructed on the remaining property, defendants would lose some of the truck business they formerly enjoyed, and that this anticipated loss of truck business diminishes the value of the property for service station purposes by 50 percent. Monsur admits that the remaining property would be a "great location for a convenience type store" if customers could get in and out easily.
Willet feels that the size, shape and location of the remaining property make it ideally suitable "for a very nice service station." In his opinion a service station could be designed for and constructed on the remaining property which would serve the same types of customers as were served by defendants' old service station.
The trial judge found that defendants had failed to show that their remaining property was diminished in value as a result of the loss or impairment of access, and he thus rejected their demands for severance damages.
The evidence indicates to us, as it apparently did to the trial judge, that defendants' remaining property is at least as suitable for service station use as the parent tract was before the taking. We also are convinced that the remaining property is ideally suited for other commercial uses, such as convenience type stores, and that there has been no diminution in market value of the remaining property as a result of the taking.
We thus agree with the trial court that defendants have failed to show that they are entitled to recover severance damages.
Defendants contend, finally, that the fees allowed by the trial court for the two appraisers called by them should be increased. They point out that they obligated themselves to pay each expert appraiser substantially more than was allowed by the court.
An agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or even the actual payment of such a fee to the expert, is no criterion to be used by the court in fixing expert fees. The trial court has a wide discretion in fixing such fees, and we will not disturb his decisions unless it appears that he has clearly abused that discretion. We find no such abuse here.
For the reasons assigned herein, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.
DOMENGEAUX, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
A significant controversy has developed in this court regarding the manner in which land expropriated by the Department of Highways should be appraised.
*775 Two judges of this court are of the opinion that the landowner's entire tract of land, regardless of any difference in the highest and best use of its parts, should be appraised on a unit basis. The value placed on the portion of land actually taken would then be in the same proportion to the value of the parent tract that its size bears to the size of the parent tract, regardless of its highest and best use. Thus land fronting on a highway would be assigned the same value as land lying several hundred feet back from the highway, although the highest and best use of the former might be highway commercial, obviously giving it a higher market value than the latter, whose highest and best use might be agricultural or residential. The only distinction that my two esteemed colleagues would make as between various parts of a parent tract would depend on differences in physical characteristics. State, Department of Highways v. Medica, La.App., 257 So.2d 450; State, Department of Highways, v. Monsur, La.App., 258 So. 2d 162; writ refused 261 La. 463, 259 So. 2d 914, with the comment that, "... the result is correct." (Three justices dissenting). In the present case they appear to have added zoning restrictions.
I strongly disagree with Medica and Monsur, supra, insofar as they categorically condemn the front landrear land theory. My views on the subject were set out in State, Department of Highways v. Smith, La.App., 272 So.2d 746 as follows:
... We find the general basis for determining the value of expropriated property expressed in LSA-R.S. 19:9 as follows:
In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.
To the same effect, see La.Civil Code Art. 2633.
The rules set out in that statute have long been recognized by, and indeed formed, the jurisprudence of this court. In State, Department of Highways v. Landry, La.App., 171 So.2d 779, writ refused, 247 La. 676, 173 So.2d 541, we stated that:
... For, in general, the market value of the particular portion of a tract expropriated is determined by the actual market value of the portion taken, not by its average per-acre value as a pro rata portion of the parent tract.

* * * * *
We regard the proposition as settled by Louisiana jurisprudence and statute, therefore, that landowners are entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because a new highway frontage will be provided, by reason of the taking, for formerly-rear portions of the parent tract. To allow such a deduction from the market value of the property taken, would be to allow deduction from this value for benefits which will be derived because of the contemplated improvement for which the expropriation was made, in direct contravention of LSA-R.S. 19:9, the legislative provision forbidding landowners from being deprived for such reason of the true market value of their property which is expropriated for public purposes.
Writs were denied by our Supreme Court in the Landry case with the statement that, "On the facts found by the Court of Appeal there appears no error of law in its judgment." Landry, supra.
The position espoused in Landry was reiterated in State, Department of Highways *776 v. LeDoux, La.App., 184 So.2d 604, wherein we said:
We consider the Louisiana jurisprudence to be settled, therefore, that generally the market value of the particular part of a tract expropriated is determined by the actual market value of the portion taken, and not by its average per-acre or square-foot value as a pro rata portion of the parent tract. Also, a landowner is entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because of the fact that by reason of the taking a new highway frontage will be provided for formerly rear portions of the parent tract.
In their excellent work on the subject, Eminent Domain in Louisiana, Professors Melvin G. Dakin and Michael R. Klein recognize the jurisprudence, of which the above cited cases are part, on page 173, as follows:
... When there is a partial taking and the land expropriated has a different highest and best use than the remainder of the landowner's tract, it appears that the courts will value the land taken separately from the remainder on the basis of its own highest and best use and will not consider the value of the land taken in relation to the whole tract.71
71 [Numerous Citationsomitted]
We see, then, that the front landrear land concept of awarding compensation is so well entrenched in both the statutory and jurisprudential law of Louisiana that in cases where it becomes the appropriate tool it may be used.
The thoughts therein expressed are shared by the majority of this Court, as is evidenced in a series of opinions that we have recently handed down. See, besides the cases cited in the above quotation: State, Department of Highways v. Bertrand, La.App., 184 So.2d 611; State, Department of Highways v. Trosclair, La. App., 207 So.2d 597; State, Department of Highways v. Spera, La.App., 272 So.2d 765; State, Department of Highways v. Stegeman, La.App., 269 So.2d 480; State, Department of Highways v. Mertens, La.App., 271 So.2d 280.
It seems evident to me, from the cited cases, that this court is now firmly committed to the front landrear land approach in situations to which its application is proper. Indeed such was admitted by the author of the instant majority opinion in footnotes appended to the LeDoux and Trosclair cases, supra. It is therefore my opinion that the law was not "correctly stated in State, Department of Highways v. Joseph K. Medica, La.App., 257 So.2d 450", as is asserted by my learned brothers of the majority. Instead I hold the strong conviction that the Medica and Monsur cases, supra, insofar as they reject the front landrear land concept of valuing expropriated property, not only run contrary to the established jurisprudence of this court, but also violate the statutory law of the State of Louisiana as found in LSA-R.S. 19:9.
Be that as it may, however, I cannot say that the trial judge erred manifestly in accepting the values placed on the taken property by the State's appraisers, and hence in valuing the expropriated property as he did, in the case at bar. A number of the above cited cases, including, originally, Landry, supra, and most recently, Stegeman, supra, stand for the proposition that once the use tract is defined, i. e., it is determined what portion of the parent tract has a highest and best use as commercial property, the average unit value of the use tract may be employed to ascertain the value of the expropriated portion. In such a situation the expropriated portion would be assigned a value which bears the same proportion to the overall value of the use tract as its size bears to the size of the entire use tract. This, of course, is not a pure front landrear land approach, but it is *777 rather a modification thereof that in the proper circumstances may be applied.
In the instant case the entire parent tract had a highest and best use as highway commercial. I therefore find no manifest error in the trial court's acceptance of the valuation of the State's appraisers, whose methods were not violative of the allowances set out in Landry and Stegeman, etc., supra, and I therefore see no legal basis for a reversal of the trial court's method of evaluating the property taken. Accordingly I concur with the majority insofar as they affirm that portion of the judgment.
Likewise I have no quarrel with the majority's holding in reference to the value of the improvements, or with its denial of additional expert witness fees.
I cannot agree, however, with the denial of severance damages. Mr. Monsur opined, and it seems an obvious fact, that the construction of a boulevard divided by a 32 foot median will severely limit the access of westbound traffic to defendant's remaining land. We also have considerable evidence, less optimistic than indicated by the majority, regarding what effect the diminished size of defendant's property will have on his ability to use it for what is admittedly its highest and best usea full line service station such as the one that he operated thereon prior to the taking.
It was established by plaintiff's witness, Leonard Bernard Mayeaux, Jr., the assistant project engineer for the Department of Highways in the 8th District of Alexandria, that under existing regulations the driveways into any new service station constructed on the remaining land would have to be no more than 15 feet apart. This alone, said defendant and his lessee, Arthur C. Stewart, Jr., eliminates the possibility of constructing a full line service station such as the one destroyed by plaintiff.
Stewart testified that he had operated defendant's station as the lessee thereof for the past five years. He said that his customers were 70% tourist and 30% local. Of all his trade, 30% consisted of large, cross country trucks that could not use a service station constructed on the remaining land. He added that he spoke from experience as in the past he had been a truck driver. Defendant testified in a similar manner, except that he had not personally operated trucks, but he has been in the service station business since 1948.
John R. Barlowe, the District Representative for Phillips Petroleum Company, (this was a Phillips 66 Station) also testified in this regard. He has been in the service station business for 35 years and has actually been involved in purchasing service station sites for his company for 22 to 25 years. He stated that the factors to be considered in choosing a site are, inter alia, accessibility, size, density of population in the area, visibility, etc. He said that he had inspected the remaining land and had recommended to defendant that he not rebuild because the size and access did not meet the company's minimum requirements. He pointed out that potential customers traveling away from Alexandria would have to cross a major highway in order to enter the station and that large transport trucks would be practically unable to use the facility. He admitted that they build service stations on boulevards but said that the area in question lacks the density of population to support such a station. When a station is dependent on transient traffic, as defendant's was, it must in his opinion get the traffic from both directions.
In my view this evidence is sufficient to justify an award of severance damages, as it establishes to my satisfaction that defendant has suffered an economic loss over and above the value of the land and improvements that were taken. The remaining land will have far more limited access, and not being as suitable for the use to which it had been put, its highest and best use, it will have a diminished market value.
*778 As to the amount of severance damages we have only the testimony of Mr. Monsur and the report of Mr. Webb. Mr. Monsur opined the remainder has been damaged in the amount of $7,125.00. Mr. Webb who thought its original value to have been $18,875.00, as opposed to Mr. Monsur's allowance of $14,250.00 for the remaining land, assigned $11,325.00 as severance damages. Averaging the two I arrive at a figure of $9,225.00 which in my opinion should be awarded to defendant for this item. Louisiana Power and Light Company v. Gaupp, 255 La. 563, 232 So.2d 273; State, Department of Highways v. Smith, supra.