FRUGÉ, Judge.
This is an expropriation suit arising out of the widening of Louisiana Highway 1 between Alexandria and England Air Force Base. The parent tract, which contained 15,684.4 square feet, is approximately 200 feet deep and has a frontage on Highway 1 of 80 feet. The part taken, which is approximately 80 feet wide and 116.4 feet deep, contains 9,135.1 square feet. The remainder, which is approximately 83 feet deep and has a frontage on Highway 1 of 80 feet, contains 6,549.3 square feet. Also taken were a small concrete block service station and a small two-bedroom frame residence.
Pursuant to R.S. 48:441 et seq., the Department of Highways deposited $10,531 as its estimate of just compensation. The defendant withdrew the deposit and filed an answer demanding a total award of $23,672. The trial court judgment awarded the defendant $17,672, and taxed the costs of the proceeding, including the $600 fee of defendant’s expert witness, to the Department of Highways. On this appeal, the Department of Highways contends that the court erred in: (1) utilizing the front land-rear land concept instead of the average unit value concept to find the value of the land taken, and (2) accepting Mr. Monsur’s estimate of the value of the improvements to the exclusion of the Department’s expert, particularly as to the estimated depreciation. We affirm.
The Department’s contention that the award should be based on the average per unit value is based on the holdings of State, Through the Department of Highways v. Medica, 257 So.2d 450 (La.App. 3rd Cir., 1972), and State, Through the Department of Highways v. Monsur et al., 258 So.2d 162 (La.App. 3rd Cir., 1972). We reject these arguments. State, through the Department of Highways v. Spera, 272 So.2d 765 (La.App. 3rd Cir., 1972); State, Through the Department of Highways v. Smith, 272 So.2d 746 (La.App. 3rd Cir., 1972); State, Through the Department of Highways v. Mertens, et al., 271 So.2d 280 (La.App. 3rd Cir., 1972).
The defendant’s appraiser, Mr. Monsur, appraised the land before the taking at $110 per front foot, and the part taken at $90 per front foot. He estimated the value of the remaining tract at $20 per front foot. Mr. Willet and Mr. Gehr, the Department’s appraisers, estimated the val- *560 lie of the tract before the taking at $62 and $63 per front foot, respectively. They computed the value of the land taken as a proportion of the total value of the tract, and assigned severance damages to the remaining tract. The trial court accepted Mr. Monsur’s approach.
The valuation method to be used is determined .by the particular facts and testimony of each case. State, Through the Department of Highways v. Blair, 273 So.2d 562 (La.App. 3rd Cir., 1972); State, Through the Department of Highways v. Mertens, 271 So.2d 280 (La.App. 3rd Cir., 1972). Mr. Willet and Mr. Gehr testified for the plaintiff Department of Highways; Mr. Monsur testified for defendant Cal-lens. Mr. Monsur’s analysis and explanation of his comparables, and his critique of the comparables of Messrs. Willet and Gehr was more persuasive than their testimony. He also has extensive personal experience in real estate sales, development, management, construction, and appraisal. His experience in the immediate area of Highway 1 includes developing four subdivisions, the construction of several hundred houses, the construction of commercial buildings, and the development of a mobile home park. Messrs. Willet and Gehr, while having experience as appraisers, do not have Mr. Monsur’s comprehensive experience in the real estate industry. Mr. Monsur’s analysis of the economic and geographical forces which affect land value in the Highway 1 area is also impressive. Accordingly, we find no manifest error in the trial court’s acceptance of Mr. Monsur’s method of appraisal over that of Mr. Willet and Mr. Gehr.
The appellant’s second assignment of error is that the trial court erred in accepting Mr. Monsur’s valuation of the improvements. The plaintiff-appellant states in its brief that it “has no great quarrel with Mr. Monsur’s estimates of the replacement costs of either the residence or the concrete block service station building, but seriously disputes his opinions, and the Court’s use of those opinions, regarding the depreciation factors to be applied to those buildings.” In view of Mr. Monsur’s experience in the construction industry and the similarity of his estimate of the reproduction costs of the residence and service station to the estimates of the Department’s appraisers, there is no manifest error in the trial court’s acceptance of Mon-sur’s estimate of reproduction costs.
The main difference in the appraisals is the allowance for depreciation. In estimating physical depreciation, Mr. Mon-sur used the cost-to-cure method, while Mr. Willet and Mr. Gehr estimated the effective age and future useful life for each building. The effective age was converted to a percentage of the sum of the effective age and the future useful life, and this percentage was used as a depreciation percentage. In view of Mr. Monsur’s comprehensive experience in the construction industry, we find that he is well qualified to estimate the depreciation in the cost-to-cure basis. We accept his valuation and reject that of Mr. Willet and Mr. Gehr for the reasons pointed out in Dakin and Klein, Eminent Domain in Louisiana, Chapter IV, § 7(D) page 257:
“However, while mathematical or accounting methods are relatively easy of calculation, their worth in appraisal practice is dubious even when combined with techniques for reflecting good or bad maintenance such as the use of “effective age” for “chronological age.” Their use is bottomed on an assumed relationship between age and current market value which is often fallacious and can give rise to gross error.
“Thus, in lieu of a mathematical method, an appraiser may use the so-called “observed condition” or “cost to cure” method, an approach which lends itself more readily to reflecting the three deteriorating factors in depreciation; physical wear and tear and functional and *561 economic obsolescence. In this approach, foundations and framework deficiencies are generally deemed not to be “curable” and hence depreciation as to this portion of a building may be estimated on some modified mathematical basis such as a straight-line basis. The other elements of the building may be curable and, as to them, “cost to cure” or cost to repair and replace building elements may be equated with physical depreciation. Such factors would be the basis for the discounting which a buyer would engage in when comparing existing property with new property.”
We, therefore, find that the trial judge was correct in accepting Mr. Monsur’s 20% depreciation of the residence.
In estimating the depreciation of the service station, Messrs. Willet and Gehr took into account functional obsolescence and estimated the depreciation of the station at 66% and 60%, respectively. Mr. Monsur found no functional or economic depreciation and estimated the physical depreciation at 20% on a cost-to-cure basis.
The station has a concrete slab foundation, concrete block walls, built up roof and metal window frames. The interior walls are frame construction. There are two rest rooms and a storage room in the building. The canopy over the driveway and pump island is frame construction. There are two gasoline pumps and tanks. The basis of Willet’s high estimate of functional obsolescence is his contention that it is no longer economically feasible to operate a two-pump station. He stated that this station was more of a neighborhood station than a commanding American Oil Company major product identification station. Mr. Willet’s high depreciation was based more on the fact that the service station is not a new, modern station with expanded facilities than on the construction of the building itself. It is based more on economic factors than on inefficient or obsolescent construction methods.
Mr. Monsur testified, however, that a large quantity of the gas sold in the Shreveport area is sold in self-service, two-pump stations. He stated that Callens’ property was ideally suited for self-service type gas sales operation. Monsur pointed out that one of the highest volume gas retail businesses in town is a self-service station. The overhead in such a station is much lower than the overhead in a larger multi-service station. All that would be needed to convert the Callens station into a self-service station is a sign stating that it is a self-service station and stating the price of gas. Therefore, we find that Messrs. Wil-let and Gehr’s deductions for functional obsolescence and economic depreciation were not valid. The trial judge was correct in accepting Mr. Monsur’s depreciation which was based on physical deterioration only. Also included in the cost of improvements were two gasoline storage tanks and a septic system which had depreciated values of $492 and $400, respectively.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.