GULOTTA, Judge.
The Jefferson Parish School Board seeks to expropriate approximately 32.96 acres of unimproved ground belonging to the Marrero Land and Improvement Association, Ltd., appellants. The acreage sought- *586 is part of a 400 acre tract of land owned by defendant and is located on the west bank of the Mississippi River in Marrero in Jefferson Parish. The particular area is in the northeast section of the larger tract which is bounded on the north by the 16th Street Canal; on the west by Barataría Boulevard; to the rear and south by a utility company servitude; and on the east by a trailer court owned by the defendant.
The proposed use by the School Board is for the immediate construction of a senior high school on that part of the ground closest to the 16th Street Canal and for the future construction of an additional senior high school in the rear area of the ground.
Plaintiffs seek the expropriation of the subject property for the sum of $280,160, the value placed on the property by the school board appraisers. The defendant filed peremptory exceptions which, in effect, state that more land is being sought than is required and further that there is a non-joinder of parties in that the land is burdened with two leases, one of which is a mineral lease. Defendant claims that the lessees must be made parties defendant since they are indispensable parties. Certain other dilatory exceptions were filed.
Defendant, in his answer, avers that the land is not required by the school board presently or in the foreseeable future and further that the evaluation placed by the school board is $8,500 per acre while the true value of the property is $30,000 per acre. By stipulation, the defendant waived all exceptions filed and all defenses save that plaintiff has not offered just compensation to the defendant including severance damages and that plaintiff seeks to expropriate more land than is necessary for its purposes. It was further stipulated that all mineral rights were to be reserved to the defendant and to its lessee. However, we are informed in argument by the school board and by the defendant, Mar-rero, that there is no question of severance damages posed for our consideration. The only issues, therefore, are whether or not more land is being sought by the school board than is required to be expropriated and whether or not the school board has offered just compensation for the value of the land taken.
In connection with the need for land by the school board for the construction of an additional senior high school, plaintiffs offered the testimony of Peter C. Bertucci, the Superintendent of Schools of Jefferson Parish. He testified that there are only two senior high schools located on the West Bank, both of which are overcrowded and are being platooned with morning and afternoon classes. Based on projected enrollment in 1970 and 1971, an additional 76 classrooms will be needed. In the 1971-1972 school year the needs will be increased to 101- additional classrooms. Projected over a period of five years, the need will be 193 additional classrooms for senior high school students. He stated further that the proposed immediate construction will make available 100 additional classrooms; however, upon completion, the amount of classrooms available will be insufficient, and that the construction on the second school should commence immediately after the first school is completed. Bertucci stated that the recommended area for the site of a senior high school is a minimum of 30 acres plus an additional acre for each 100 pupils predicated on an ultimate maximum enrollment. With an immediate anticipated enrollment of 1,000 students, the minimum land requirement, therefore, as recommended, is 40 acres. He testified that funds have been allocated for the construction of the first school to be known as Daniel Webster Senior High School. However, the funds for the second school to be constructed must be provided either by an *587 increase in taxes or by the passage of a bond issue. He testified further that the central location and accessibility to transportation influenced the selection of this particular site.
The trial judge readily disposed of the issue whether or not the school board is seeking to expropriate more land than is immediately required. In his reasons he stated:
“I feel that this is one of the few examples of the type of planning that we have needed in the Parish for the past twenty years. Looking forward to the future might save us some headaches and give us the type of buildings and construction and add a little savings to the taxpayer. The Court feels that the need has been shown for this much land. They could actually use more if they could afford it. The Court therefore feels that the need has been established and shown and it is not arbitrary and capricious and on the other hand it is commendable for the forethought that has gone into the project.”
We agree with the conclusions reached by the trial judge as well as with the soundness of his reasons. The School Board clearly showed a present and immediate need for the entire area sought to be expropriated and further made a showing of good faith in seeking the expropriation of the entire tract. It is well settled in our jurisprudence that the extent of the property to be expropriated and the location are within the sound discretion of the body possessing the power of eminent domain and this determination will not be interfered with if made in good faith. Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901 (1953); Evangeline Parish Police Jury v. Deville, 247 So.2d 258 (La. App. 3rd Cir. 1971).
The remaining question to be considered by the court, involving the value 'of the land, required an analysis of the compara-bles used by the appraisers who testified for the Board and for the defendant. Two realtors and appraisers, Robert W. Weigand and Joe Billa appraised the property at the request of the School Board, while two other realtor appraisers, Omer F. Kuebel and Charles J. Derbes, Jr., appraised the property at the request of Marrero. Weigand on February 26, 1970, made an appraisal of the entire 32.96 acre tract in the sum of $197,480.40 or approximately $6,000 per acre. On November 20, 1968, the appraisal he had placed on the ground was $280,160, or approximately $8,500 per acre. It is to be noted that the subject property is zoned R-l, which is residential — single family dwelling. Billa, on July 3, 1970, placed an appraised value for the entire 32.96 acre tract at the sum of $196,164, or from $5,653 to $6,372 per acre. However, he signed the original $280,160 appraisal made by Weigand, the amount offered by the School Board. Kuebel, defendant’s appraiser, on the other hand, placed a value of $428,400 for the subject property, or $13,000 per acre as raw, undeveloped land and $14,-597.83 per acre were we to consider the use of the property for subdivision development. Derbes, the remaining appraiser, placed an evaluation of $13,000 per acre.
It is uncontroverted that the highest and best use of the land is for subdivision development. The appraisers, however, were in conflict as to the amount of consideration that should be given to the present zoning of R-l as compared to the probability of zoning changes that might be made in the near future to either multiple family dwellings or commercial usage.
It is significant that Weigand considered 11 comparables in arriving at his appraisal determinations and that Billa used 10 of those together with two additional com- *588 parables. For all intents and purposes, they used the same comparables with three exceptions. While differing as to the extent of the adjustments up or down, they arrived at a similar evaluation. (See appendix attached hereto.) It is also significant that Kuebel and Derbes relied on many of the same comparables. This was done, however, to a lesser extent than in the case of Weigand and Billa. Derbes considered two of the comparables offered by Weigand and Kuebel used one of those considered by Weigand. Needless to say, there was a variance in these evaluations; however, both Kuebel and Derbes placed an evaluation of $13,000 per acre for the subject property.
It appears from the record that different evaluations are the result of several factors. Weigand and Billa considered to a lesser extent the growth potential in arriving at the present market value, while Kuebel and Derbes considered to a greater extent the future prospect for development considering the economic and potential economic growth and projected population increase. To varying degrees, each considered the relationship between the comparables relied upon and the subject property involving location, market conditions at the time, physical characteristics, highest and best use, other sales, comparative size, date of purchase, zoning, desirability and improvements. The value per acre depends to a large extent on the weight that each appraiser gives to those factors either by way of an upward or downward adjustment. This accounts for the divergence in evaluation.
The trial judge in arriving at a value of $378,504.10 used a basis of $11,-483.65 per acre. Contrary to appellee’s argument, the trial judge in determining the market value gave considerable weight to the future prospect for development, considering potential economic growth and projected population increase. We find no fault with this. Had he not done so, he would not have set an evaluation so close to that offered by Kuebel and Derbes, the appellant’s appraisers. We might observe that the record contains some testimony of a conjectural and speculative nature when considering future economic growth, extensions of expressways such as the Dixie Freeway, the Barataría Boulevard widening and the extension of the Lapalco Right of Way as well as other projections. The trial judge properly could not place as much weight on these projections as desired by appellants and suggested by the appraisers.
In the case of State, Through Department of Highways v. Kennedy, 193 So. 2d 848 (La.App. 1st Cir. 1966); writ denied, involving a question of quantum only, the court stated at page 853 :
“ * * * Where the experts differ as to the valuation of land the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the appellate court and, unless manifest error is shown, his decision should not be disturbed on appeal. Central Louisiana Electric Company v. Williams, La.App., 181 So.2d 844.”
See also: Florida Gas Transmission Company v. Munson, 198 So.2d 750 (La.App. 1st Cir. 1967); writ denied.
After considering the entire record, as well as an analysis of the com-parables, we are of the opinion that the trial judge did not commit manifest error in determining the amount of the evaluation of the 32.96 acres sought to be expropriated by the Jefferson Parish School Board. On the contrary, we agree with his evaluation and determination. Accordingly, the judgment is affirmed. Costs are to be paid by the plaintiff.
Affirmed.

*589

*590

*591