304 So.2d 77 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Warren H. SMITH, Jr.
No. 9964.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
*78 Alvin J. Liska, New Orleans, for appellant.
Clint L. Pierson, Jr., Covington, for appellee.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
Plaintiff, State of Louisiana, through the Department of Highways, appealed the judgment awarding defendant, Warren H. Smith, Jr., compensation in the sum of $59,605.60 for 20,790 square feet of commercial property expropriated for highway purposes.
The Smith property is situated on the east side of U.S. Highway 190, just south of Covington, Louisiana, in the Town of Claiborne, St. Tammany Parish, in the Resubdivision of Woodlawn Lane, located in Section 42, Township 7 South, Range 11 East. The site contains approximately four acres of land and is bounded by U.S. Highway 190 on the west, Fourth Street on the south, and Cherry Street on the east. It is an irregularly-shaped tract and *79 has a frontage of 479.9 feet on U.S. Highway 190, a frontage of 490.6 feet on Fourth Street and also a measurement of 348 feet on Cherry Street. The property is improved with a porcelain metal building on a slab, occupied as an automobile agency, having a display room, offices, and parts and service departments. Additionally, another metal building, used as the body and paint shop, is located in the rear. Toward the north end of the property is an old two-story frame building utilized for storage. In front of the service and sales areas of the building is a concrete drive-in area, and on the southern and northern sides of the building is a shelled service area. The remaining area is comprised of parking spaces for display of new and used automobiles, customer parking, et cetera. In front of the building, at the front property line, is located a pond measuring 20 by 20 feet with a flow-spray type well. There is a stone coping around the pond and some shrubbery around the coping. A large round blinking electric sign on the site advertises the Smith Chevrolet-Oldsmobile Agency, while other small signs advertise the used car department.
The part taken is an irregularly-shaped strip across the entire front of the property, which includes some of the shelled area and some of the concrete area. The pond and all of the signs are within the taking, in addition to underground electrical and water lines. It was stipulated at the trial that the value of the improvements taken amounted to the sum of $21,352. The date of the taking was established as March 23, 1970.
The trial court was of the opinion the property was valued at $1.84 per square foot, or the sum of $38,253.60. This sum, added to the stipulated value of the improvements, gave a total award of $59,605.60, with credit being given for the amount deposited by the Department. The court awarded $2,000 to Mr. Frederick M. Guice and $2,500 to Mr. Frank Patecek, appraisers for defendant. These appraisal fees were taxed as costs, with the Department to bear the costs and to pay interest on the excess of the amount awarded above the deposit made. Severance damages were denied.
The Department has appealed the award of $1.84 per square foot for the part taken, contending the trial court erred in adopting the so-called 4-3-2-1 method of evaluation and also erred in allowing time adjustments to prior comparable sales. In effect, the Department contends that the entire tract should be valued as commercial, that being its highest and best use, and further that it possesses a uniform market value without differentiation between front and rear portions.
Defendant Smith has appealed the denial of severance damages but abandoned this request upon oral argument, requesting only that the trial court's award of $59,605.60 be affirmed.
We affirm the denial of severance damages and amend the trial court's award of just compensation.
The Department's appraisers, Messrs. Edward J. Deano and Michael C. Breeding, used the accepted method of adjusting prior comparable sales to arrive at an evaluation of 75 cents per square foot for the entire tract. They both felt that no adjustment should be made for passage of time.
The landowner's appraiser, Mr. Frederick M. Guice, likewise used prior comparable sales but adjusted for time and arrived at $1.10 per square foot. His other appraiser, Mr. Frank Patecek, utilized the same method, adjusted for time, and reached $1.15 per square foot.
The most reliable and approved method for determining the market value of an immovable is to consider comparable sales. State v. McCarty, 232 La. 145, 94 So.2d 11 (1957); State, Department of Highways v. James, 226 So.2d 535 (La. App. 4th Cir. 1969). As such sales are almost *80 never fully comparable, i. e., exactly like the subject property, it becomes necessary to make adjustments to sales of property similarly situated which occurred prior to the taking in an effort to determine the true value of the subject property. Improvement in economic conditions in general and the demand for land, in particular, are time adjustments frequently required to be made to sales which occur prior to takings. State, Sabine River Authority v. Miller, 184 So.2d 780 (La.App. 3rd Cir. 1966); State, Department of Highways v. Munson, 174 So.2d 923 (La. App. 1st Cir. 1965), writ refused, 247 La. 1091, 176 So.2d 146; Greater Baton Rouge Consolidated Sewer District v. Nelson, 144 So.2d 186 (La.App. 1st Cir. 1962).
Defendant's appraiser, Mr. Patecek, used all the commercial sales transacted in the subdivision during the years 1969 and 1970 and determined that an adjustment of a one percent increase per month was reasonable. In addition to time, Mr. Patecek adjusted for location, size, topography and elevation. Mr. Guice, defendant's other appraiser, used eight sales from 1966 to 1970, made adjustments by standard procedure, adjusted for time at the rate of one percent per month also, and valued the entire tract at $1.10 per square foot.
Plaintiff's appraisers used four comparable sales, three of which were the same, and used the standard adjustments but refused to adjust for time. The Department contends their version should be followed.
In controversies of this kind, the Court must be guided by expert testimony. In State Department of Highways v. Salassi, 244 So.2d 871, 877 (La.App. 1st Cir. 1971), this Court said:
"* * * [T]he trier of fact has the right to evaluate the weight to be given to the testimony of each witness in an expropriation case and has the right to make factual determinations as to which of the factors relied upon by the witnesses relevantly influenced market value and severance damages. * * *"
See, also, State, Department of Highways v. Singletary, 185 So.2d 642 (La.App. 1st Cir. 1966).
We find the trial judge was not manifestly erroneous in adopting Mr. Patecek's evaluation of $1.15 per square foot as the value of the entire tract.
After determining the entire tract was valued at $1.15 per square foot, the trial court utilized the 4-3-2-1 method and valued the front portion of the tract, that is, the portion fronting on U.S. Highway 190, as worth more than the remainder. In defense of the 4-3-2-1 method, the defendant cites State, Department of Highways v. Lewis, 142 So.2d 652 (La. App. 1st Cir. 1962), and State Department of Highways v. Sumrall, 167 So.2d 503 (La.App. 1st Cir. 1964), writ refused, 246 La. 905, 168 So.2d 820. However, as stated in Sumrall, each case must stand or fall on its own facts, just as in State, Department of Highways v. Lancon, 174 So.2d 257 (La.App. 3rd Cir. 1965), where the use of the 4-3-2-1- method was denied because the facts presented a rural lot and the Court felt the expropriated portion was not of greater value than the remainder of the tract. It is true, as defendant points out, that a landowner should not be limited to an average value as a pro rata portion of the parent tract where the front portion has a different and higher best use value. State, Department of Highways v. Spera, 272 So.2d 765 (La.App. 3rd Cir. 1972), cert. denied, 272 So.2d 695 (1973); State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3rd Cir. 1972), cert. denied, 272 So.2d 696 (1973); State, Department of Highways v. Stegemann, 269 So.2d 480 (La.App. 3rd Cir. 1972), cert. denied, 271 So.2d 533. These cases are distinguishable from the instant one in that the Court could determine a definite difference in use potential between the front portion and the rear. The subject tract is *81 commercial throughout, being utilized commercially from the front to the rear and being designed originally for the purpose for which it is presently being used, i. e., an automobile distributorship. In defense of the higher appraisal for the front portion, defendant's appraisers cited several sales in the locality of small sections of property with highway frontage. Those sales were for a higher value than would be the value of the entire tract, but in every instance the owner maintained access to the highway because the section comprised only a small portion of the frontage. A different situation is presented in the instant case because the 20,790 square feet comprising the part taken extends from one boundary to the other, bordering on U.S. Highway 190.
This precise situation was contemplated in State, through Department of Highways v. Hoyt, La., 284 So.2d 763 (1973), where the Court said:
"Usually, however, there is no market value for a strip taken for highway or other public-servitude purposes. The landowner would not normally sell at any reasonable price the portion cutting his tract off from the highway or (in the case of other servitudes) bisecting it. There is no willing buyer (except the servitude-seeker) for the strip to be taken, normally useless because of its small-depth and its shape for any other purpose than the public servitude.
"For this reason, in holding that the landowner must receive the actual market value of the front strip taken, the courts have valued it at the price per unit (square foot, front foot, acre, etc.) that a willing seller would pay for it at its highest and best use as if the strip taken were part of a marketable front area of the parent tract sold for such highest and best use. As the dissent here in the intermediate court noted, 272 So.2d 776:
`* * * A number of the above cited cases, including, originally, Landry, supra, and most recently, Stegemann, supra, stand for the proposition that once the use tract is defined, i. e., it is determined what portion of the parent tract has a highest and best use as commercial property, the average unit value of the use tract may be employed to ascertain the value of the expropriated portion. In such a situation the expropriated portion would be assigned a value which bears the same proportion to the overall value of the use tract as its size bears to the size of the entire use tract.'"

(State, through Department of Highways v. Hoyt, 284 So.2d at 765)
In other words, once a use tract has been determined, it receives the same value throughout. The tract before us is one use tract. It has been designed and has been used for one purpose, an automobile distributorship. The portion expropriated was used to display cars in front of the main sales and service building. The appraisers for both sides considered that the highest and best use of the property was commercial and, indeed, it is actually being used as such. Being an integral part of the commercial establishment, we cannot say that the part taken, which measured 57 feet at the north end and diminished to 25 feet at the south end of the property, had a different use value from the whole tract.
Since we find the entire tract is the use tract, as set forth in Hoyt, we find as a matter of law that the trial judge erred in applying a higher value to the portion taken than to the remainder of the tract. We find no manifest error in the conclusion of the trial judge that the tract was valued at $1.15 per square foot, and since the portion taken involved 20,790 square feet, the award in the judgment of the trial court is amended to read $23,908.50 for the expropriated portion. The award of $21,352, as the stipulated value of improvements, is affirmed *82 and also the award of appraisers' fees.
Plaintiff-appellant is taxed with all costs of these proceedings as may legally be assessed against the State of Louisiana.
Amended and as amended, affirmed.