339 So.2d 431 (1976)
GREATER BATON ROUGE AIRPORT DISTRICT et al., Appellants,
v.
Mrs. Florence Hobgood HAYS et al., Appellees.
No. 10799.
Court of Appeal of Louisiana, First Circuit.
September 20, 1976.
Rehearing Denied November 15, 1976.
*433 Joseph Keogh, Charles Pilcher, Edward V. Fetzer, Baton Rouge, of counsel for appellants.
Ashton L. Stewart, Baton Rouge, of counsel for appellees.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
CHIASSON, Judge.
In December, 1973, the plaintiffs-appellants, the Greater Baton Rouge Airport District, the City of Baton Rouge and the Parish of East Baton Rouge, brought this action to expropriate an avigation servitude on an 11.234 acre tract of land. This 11.234 acres, located on the east side of Plank Road directly opposite Ryan Airport, is part of a 500 acre tract owned by the defendants-appellees, Mrs. Florence Hobgood Hays, Edward Chase Hobgood, Herbert Wright Hobgood, John Pugh Hobgood and Bill Arp Hobgood. Acquisition of this servitude was required to obtain federal funds for the extension of the northeast-southwest runway (runway 4-22) at Ryan Airport. This extension took approximately a year to build and was completed in October, 1972.
Immediately prior to the start of this extension, use of runway 4-22 by jet aircraft *434 was limited to those cases in which prior approval for the use was obtained from the airport director. Because of its composition, runway 4-22 had to be inspected before and after each use by jet aircraft. Since completion of the extension, runway 4-22 has been in regular use by commercial and non-commercial jet aircraft.
After a trial on the merits, the District Court rendered judgment awarding appellants an avigation servitude on the 11.234 acres. In addition, there was judgment in favor of the appellees and against the appellant, Greater Baton Rouge Airport District, awarding the appellees $198,513.00 as compensation, including severance damages, for the taking of the servitude and interest from the date of the taking. The District Court held that the date of the taking was the date suit was filed.
The errors complained of by the appellant may be summarized as follows:
1. The District Court erred in granting appellant an avigation servitude rather than a clear zone easement;
2. The District Court erred in overruling the appellants' pleas of prescription;
3. The District Court erred in assessing damages; and
4. The District Court erred in finding that the date of the filing of the suit was the date of the taking of the servitude.
The appellees, in their answer to the appellants' appeal, contend that the District Court erred:
1. In its determination of the amount due as severance damages; and
2. In awarding legal interest from the date of judicial demand, rather than the date the extension of runway 4-22 was completed.
The initial question posed in this appeal is whether the appellants sought to expropriate a "clear zone easement" or an "avigation servitude". One reason the appellants brought this suit is that the FAA made the acquisition of an "avigation easement" a requirement for obtaining federal funds for the extension of runway 4-22. In Civilian terminology the FAA required that the appellants obtain an "avigation servitude".
In their petition the appellants described the property they sought to expropriate as:
"An 11.234 acre, more or less, servitude for avigation purposes the height of which is defined as a height on an inclined plane at a slope of 34:1 (1 foot of elevation for 34 feet of horizontal distance) located directly above the clear zone approach area beginning at a point 200 feet from the Northeast end of the runway as shown further on a map made by John W. Kellen, Jr., dated November 6, 1972, revised January 24, 1973." (Emphasis added).
The appellants seek to expropriate a "servitude for avigation purposes". There is not, as appellants contend, a "vast difference" between a "servitude for avigation purposes" and an "avigation servitude". In this case the two are the same. There is a difference between a "clear zone easement" and a "servitude for avigation purposes". The rights granted under a "clear zone easement" comprise only a portion of the rights granted under an "avigation easement". United States v. Brondum, 272 F.2d 642 (5th Cir. 1959); United States v. 64.88 Acres of Land, 244 F.2d 534 (3rd Cir. 1957). A "clear zone easement" is a servitude for a specific avigation purpose and not a general servitude for avigation purposes.
It is true, as the appellants contend, that the determination of the extent of the property to be expropriated is within the sound discretion of the body possessing the power of eminent domain, and that this determination will not be interfered with by the courts if made in good faith. Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901 (1953); Jefferson Par. Sch. Bd. v. Marrero Land & I. Ass'n, Ltd., La.App., 258 So.2d 585 (4th Cir. 1972). The determination of the bodies possessing the power of eminent domain was that the property to be expropriated was a "servitude for avigation purposes". Resolution 10845 of the Parish Council of East Baton Rouge Parish, Resolution 1019 *435 of the Board of Commissioners of the Greater Baton Rouge Airport District.
Appellants cannot now contend that, while they were required by the FAA to obtain an "avigation easement" and brought suit to obtain a "servitude for avigation purposes", all they really seek is a clear zone easement.
The appellants' second contention is that the District Court erred in overruling the appellants' pleas of prescription. The District Court's determination, that the appellees' right to recover had not prescribed, was based on the District Court's finding that there had been an increased taking of the appellees' property caused by the extension of runway 4-22 and that such additional taking is compensable. Michigan Wis. Pipe L. Co. v. Sugarland Develop. Corp., La.App., 221 So.2d 593 (3rd Cir. 1969). We agree with the District Court's conclusions that there was an increased taking, that this increased taking is compensable, and that the increased taking occurred within the two year prescriptive period provided by R.S. 19:2.1.
The appellants contend that the appellees have lost their right to compensation through liberative prescription.
R.S. 19:2.1(B) provides:
"B. All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19.2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation."
Article 2630 of the Civil Code provides:
"Whenever any corporation, constituted under the laws of this State, for the construction of a railroad, plankroad, turnpike road, a canal for navigation, or for the purpose of transmitting intelligence by magnetic telegraph, can not agree with the owner of any land which may be wanted for its purchase, it shall be lawful for such corporation to apply by petition to the judge of the district court in which such land may be situated, or if it extends into two districts, to the judge of the district in which the owner thereof resides, and if the owner does not reside in either district, then to the judge of either district, describing the lands necessary for their purposes, with a plan of the same, and a statement of the improvements thereon, if any, and the name of the owner thereof, if known and present in the State, with a prayer that the land be adjudged to such corporation upon the payment to the owner of all such damages as he may sustain in consequence of the expropriation of his land for such public work. All claims for land, or damages to the owner caused by its expropriation for the construction of any public works, shall be barred by two years' prescription, which shall commence to run from the date at which the land was actually occupied and used for the construction of the works."
The prescriptive periods provided by these articles apply only to actions for damages and claims resulting from a legal expropriation. A. K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765 (1959); Miller v. Colonial Pipeline Company, La.App., 173 So.2d 840 (3rd Cir. 1965). Appellees' claim for compensation for the expropriation of the avigation servitude does not begin to prescribe until there has been a legal expropriation of the appellees' property.
R.S. 9:5624 provides:
"When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained."
The prescriptive period provided by this statute applies only when private property is damaged for public purposes and not to actions for the recovery of the value of private property taken for public purposes. A. K. Roy, Inc. v. Board of Commissioners, supra. In the present case, the appellees seek compensation for the property taken, the avigation servitude, and not for damages sustained as a result of prior *436 flights. The appellees' right to seek just compensation has not prescribed.
Appellants also argue that the appellees' right to compensation has prescribed because of a 1965 East Baton Rouge Parish Ordinance, No. 1135, which established height and use regulations in an area around Ryan Airport. This ordinance established height and use regulations in an area around Ryan Airport. It did not create either a "clear zone easement" or an "avigation servitude" and it is not, as was recognized by the Trial Judge in his written reasons, grounds for sustaining a plea of prescription.
The type and amount of damages awarded by the District Court present the third question for consideration in this appeal. The appellants offer four arguments to support their claim that the District Court erred in assessing damages.
1. The District Court erred when it based its award on the taking of an avigation servitude rather than on the taking of a clear zone easement.
2. The District Court erred when it found that there was evidence sufficient to establish the extent of the appellees' injury.
3. The District Court erred when it awarded severance damages.
4. The District Court erred as to the amount the appellees are entitled to recover.
The appellants brought this suit to expropriate an avigation servitude. The District Court properly awarded compensation on the basis of the property taken and the effect of the taking of the property.
While this Court would have preferred, as the District Court would have preferred, a more detailed breakdown of the effect of the granting of the servitude as to specific portions of the appellees' property, the record contains evidence sufficient to establish the injuries suffered by the appellee. The record contains considerable testimony as to the effect of the use of the avigation servitude on neighboring property. The record also contains evidence which tends to show the effect of the use as to the value of the appellees' property.
Just compensation for the taking of a servitude is to be based upon the highest and best use of the property expropriated. Louisiana Power & Light Co. v. United Lands Co., 254 La. 885, 228 So.2d 140 (1969). The most reliable and approved method for determining the market value of an immovable is to consider comparable sales. State, Department of Highways v. Smith, La.App., 304 So.2d 77 (1st Cir. 1974). Where only a servitude is taken which allows a landowner a residual use of the surface, an award of a percentage of the full fee value is appropriate. Dixie Electric Membership Corporation v. Watts, La.App., 268 So.2d 128 (1st Cir. 1972); Columbia Gulf Transmission Co. v. C. J. Grayson, Inc., La.App., 232 So.2d 150 (2nd Cir. 1970).
Because the valuation of expropriated property is solely a question of fact, the judgment of the Trial Court on this point should be given the same weight as any other finding of fact and should not be reversed in the absence of manifest error. State, Department of Highways v. Osbon, La.App., 292 So.2d 898 (1st Cir. 1974).
The record indicates that appropriate comparables were used in determining the market value of the appellees' property, Mr. Dan Carlock and Mr. Oren Russell, expert appraisers for plaintiffs-appellants, both testified that immediately prior to the taking, the commercial property had a fair market value of $10,000.00 per acre. Mr. Karl Snyder, expert appraiser for defendants-appellees, testified that the before taking value of the commercial property was $15,000.00 per acre.
The District Court relied upon the following comparables:
"1. East Baton Rouge Parish School Board to Big B. R. Stores, Inc., Orig. 45, Bundle 6039, Exhibit F(9) to P-4, used by Carlock, and hereinafter called the School Board property.
"2. The judgments rendered by the 19th Judicial District Court, East Baton Rouge Parish, Judge Melvin Shortess presiding, *437 in suits nos. 147,332 and 147,351, entitled `Greater Baton Rouge Airport District v. Arthur L. Carrick" and `Greater Baton Rouge Airport District v. Fred Lee Holden,' affirmed by the First Circuit, Court of Appeal (Number 8708 on the docket of said court), which judgments were relied upon by Snyder. They are hereinafter sometimes referred to as the Carrick and Holden properties."
(Footnote omitted).
In evaluating these comparables the Trial Court said:
"The School Board property was sold in 1965, almost seven years before the taking, for a unit price of $11,273 per acre. It is a tract of 4.79 acres located at the intersection of Hooper Road and Plank Road, and is comparable in size, utility and location to the subject property.
"The Holden and Carrick properties are comparable in location to the subject property, lying just across Plank Road and having been valued by the courts approximately two years prior to the date of taking of the subject property. A most significant difference is that the Carrick and Holden tracts measure approximately 200 feet on Plank Road by depths of 700-800 feet, indicating about two-thirds of the tracts was non-commercial (Hobgood-34, p. 14). In contrast, over 80% of Tract 1 lies within 350 feet of Plank Road and is clearly commercial. "Considering all of these circumstances, including the shapes of the Foster and Samson tracts, the similarity of the School Board property, the passage of time since the sale of the School Board property, the dramatic general increase in property values since that time, and the superiority of the subject property over the Carrick and Holden tracts, The Court is of the opinion that the fair market value of Tract 1, all of which the Court concludes may be treated as commercial, was, immediately prior to the taking, the sum of $15,000 per acre."
(Footnotes omitted).
We find no error in the Trial Court's determination that the commercial portion of the property had a value of $15,000.00 per acre and in treating the entire 11.234 acre tract as best suited for commercial purposes.
The 11.234 acre tract was subdivided by all of the expert appraisers for valuation purposes. Though each had a different method and there was a discrepancy in the total acreage, the following areas will be used, to-wit:
Tract A. 0.26 acreThe area within the 11.234 acre tract in which buildings are prohibited;
Tract B. 4.848 acresThe area south of Cypress Bayou;
Tract C. 3.196 acresThe area lying under Cypress Bayou;
Tract D. 3.19 acresThe area north of Cypress Bayou.
The area in Cypress Bayou (Tract C) was subtracted from the total area since it was and is already an improved drainage channel. This left an area for which compensation is due of 8.038 acres.
In evaluating the servitude for avigation purposes, Mr. Karl Snyder testified:
"Or, by another approach, the 8.03 acres, less Cypress Bayou, at fifteen thousand dollars per acre, is a hundred twenty thousand, five hundred seventy dollars. So, I felt conservatively that I should use the lower figure so as the indicated market value of the part taken, fee simple, I used the one hundred twenty thousand, five hundred seventy dollars. Now, that is the indication for all of the rights in the part taken. However, I felt the land surface of the part taken would still have a market value. The minimum height at the thousand foot distance is 29.41 feet. At the extreme end, at one thousand, seven hundred and fifty feet, the minimum height is 51.47 feet. So, I felt that the surface of the part taken would still have a limited use. It could be used for agricultural purposes, say, the growing of crops, hay, pasture, soybeans, and such. The highest and best use has changed to agricultural with a speculative increment of value in that there is a possibility that *438 the airport could be closed; it might be relocated at some future date, or the technology of flight could alter the easement. So, I felt that the indication of the property, subject property, part taken, after the taking, is fifteen hundred dollars an acre. 8.03 acres at fifteen hundred dollars an acre is twelve thousand and fifty-seven dollars for actually, the surface rights of the property, which I subtracted from the indication of a hundred and twenty thousand, five hundred and seventy dollars, which gave me an estimated market value of the part taken for an avigation easement of a hundred and eight thousand, five hundred and thirteen thousand (sic) dollars."
(Transcript pages 998 & 999).
Dan Carlock testified that Tract A would suffer a loss of 90%, and Tract B and Tract C would suffer a loss of 40%, as a result of the servitude.
Oren Russell testified that Tract A would suffer a loss of 80%; Tract B, a loss of 40.7%; and Tract D, a loss of 7.8%, as a result of the servitude.
The Trial Court concluded that Snyder's evaluation of the remaining value of the use, to-wit, 10% is realistic and proper under all the circumstances, citing State, Department of Highways v. Ronaldson, La.App., 316 So.2d 898 (1st Cir. 1975). In that case, the State had expropriated two permanent servitudes of drainage, and the Appellate Court said:
"Although we realize that there is little use to which the servitudes can be put by the defendants, their taking is nevertheless short of a taking in fee or full title, and, therefore, 90 percent of their value is just compensation in the instant case." Pg. 905.
This fits ideally Tract A, the .26 acres upon which no structure can be built. However, Tract B and Tract D are subject to much greater use by the landowners.
Dan Carlock testified:
"A. Yes, sir, because the airport or the city is not taking the land in fee. They are only taking a servitude, and they are only taking some of the property owners' rights. So, he would still be able to utilize this property for various uses and, actually, for commercial uses, but there will be some restriction as to height of buildings. He can't build a skyscraper or a real tall building on that portion of the property."
(Transcript pg. 23).
"A. Yes, sir. He could build a one story office building or a warehouse building. He can use this area for parking. He can pave it and use it for parking. He can landscape it. He can use it in conjunction with commercial operation. So, you are not takingthe taking is not as severe as it would be if it were a pipeline or a power line servitude. He still has a good many of the rights left, and I feel that forty percent of the fee value would be giving the owner any benefit of the doubt as far as the value of the servitude."
(Transcript pg. 43 & 44).
"A. . . . I am also saying that the property located in this servitude can be developed commercially because the only restriction in this servitude is actually the height of a building you could build. All of the development around the corner of Hooper Road and Plank Road, all of the development north of subject up in the Brownsfield area that we have been talking about close to Comite Drive, and the Burger King that was recently built up there, the shopping center at Hooper Road and Plank Road, service stations, the banks, any of those establishments could be located on the subject property andbefore the taking or before the servitude is imposed and after the servitude is imposed, in the servitude area and without the servitude area."
(Transcript pg. 54 & 55).
Oren Russell testified:
"Q. In your formula, you have said that thean easement removes some portion of the bundle of rights. What portion of those bundle of rights did *439 this easement remove from these 11.234 acres?
"A. On the commercial portion of the property, the primary effect caused by the easement being placed over it was the height restriction. It entered the property at about twenty-six feet. Because of building setbacks, you would not be able to use the immediate frontage for building purposes. You could use it for parking for a commercial building. The practical effect of it is that it did not affect the usage of the property. The probability is that the property will be able to be used to its highest and best use and developed commercially after the imposition of the easement as well as before.
"Q. Even though the easement would be between twenty-six and sixty-three feet over this whole portion being taken?
"A. Sir, you have a fifty foot height restriction out there anyway by zoning ordinance. You couldn't build over fifty feet if you wanted to.
"Q. Has that been enacted here since the filing of this suit?
"A. No, sir, it has been in effect for a number of years. What I am saying is if you look at Plank Plaza Shopping Center, it does not exceed approximately twenty-five feet in height. There are signs out front that may exceed twenty-five feet in height, but the buildings themselves do not. There are very few commercial buildings that I know of that exceed twenty feet. The vast majority of them are around twelve to eighteen feet. There are some special usage buildings that are higher than twenty feet but this is what the payment is for. The height limitation that is being imposed on the property. That's what the City Parish is paying for, that right to place that limit."
(Transcript pg. 171 & 172).
It was error for the Trial Judge to treat Tracts B and D the same as Tract A. Apart from the opinions and speculations of the experts, there is testimony that establishes for a fact that development has occurred in areas similarly situated off of other runways at Ryan Airport.
Under these circumstances, we are of the opinion that the value of the servitude is more realistically 40 percent of the fee value of the land. The compensation due to appellees for the avigation servitude over the 11.234 acres is, therefore, $50,178.00, calculated as follows:

 .26 Acres × $15,000 x 90% = $ 3,510
 7.778 Acres × $15,000 x 40% = $46,668
 ========
 TOTAL $50,178

Where a tract of land is partially taken, the landowners are entitled to a recovery for any resulting damage to the remainder. State, Department of Highways v. Tyler, La., 326 So.2d 349 (1976). Louisiana Power & Light Co. v. Churchill Farms, Inc., La., 292 So.2d 183 (1974). Because the expropriation of an avigation servitude is a partial taking of the appellees' property, the appellees are entitled to severance damages. Whether, in a particular case, damages should be awarded after an expropriation depends on whether the property was actually damaged by the taking. The resolution of this question depends upon the quality of proof in the case. State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972). In the present case there is expert testimony as to the sound levels which regularly exist on the appellees" property as a result of the use of the servitude, testimony from surrounding neighbors as to the effect of jet aircraft on their daily lives, and testimony by expert appraisers as to the decrease in value of the appellees' property as a result of the use of runway 4-22 by jet aircraft. All of this evidence establishes the appellees' right to severance damages.
Severance damage resulting from the expropriation of a servitude is the difference between the fair market value before and after the taking. Southwestern Electric Power Company v. Conger, La.App., 307 So.2d 380 (2nd Cir. 1975).
*440 The record contains ample evidence to support the District Court's finding that the portion of the appellees' property along Plank Road, which property's highest and best use is commercial, will suffer no diminution in value as a result of the expropriation of the servitude.
As to that portion of appellees' property best suited for residential purposes, the District Court correctly based its award on the difference between the market value of the property before and after the taking of the avigation servitude. Limiting the award to 100 acres in the general vicinity of the 1,200 foot line from an extension of the centerline of the runway is also supported by the testimony of the experts. The Trial Judge found the value of the property before taking to be $2,400.00 per acre and, after the taking, $1,500.00. We find no error in the award of $90,000.00 as severance damages.
As to severance damages to the remainder of the tract, the distance of these portions from the path of the aircraft is sufficient to support the District Court's conclusion that there was no loss in market value as a result of the granting of the servitude.
The final question for consideration is whether the District Court erred when it awarded interest from the date suit was filed. The appellants contend that interest is due from the date of judgment; the appellees contend that interest is due from the date jet aircraft began regular use of runway 4-22.
This suit has been brought under the general expropriation provisions, R.S. 19:1 et seq., which do not provide a specific time from which interest is to run. The rule appears to be that, in cases where payment does not accompany the taking of property for public use, interest will be computed from the time of the taking. This is in accordance with Civil Code Article 1938 which provides that interest is payable from the date the debt becomes due. A. K. Roy, Inc. v. Board of Com'rs for Pontchartrain L.D., 238 La. 926, 117 So.2d 60 (1960).
Art. 1, § 2 of the Louisiana Constitution of 1921 provides:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
Under this provision property is "taken" when the public authority acquires the right of ownership or one of its recognized dismemberments. Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968); Culotta v. Police Jury of Ascension Parish, La.App., 316 So.2d 463 (1st Cir. 1975). A right of ownership or one of its recognized dismemberments is acquired only after just and adequate compensation has been paid. La.Const. Art. 1, § 2. The appellants have not paid just and adequate compensation, therefore, they have not "taken" the appellees' property and are not entitled to occupy and use the property. In the "Right of Entry Agreement" (Hobgood #25) the appellees granted the appellants "the right to enter upon said property for the purpose of topping and/or cutting of all necessary trees and commencing the necessary operations in connection with the project captioned above." This agreement did not convey to appellants an avigation servitude. It specifically provided that in the event an agreement was not reached, the appellants would file an expropriation suit to obtain the property or an avigation servitude thereon.
The District Court erred when it awarded the appellants an avigation servitude and condemned the appellants to pay appellees a certain sum of money.
R.S. 19:2.1, Subd. A(3) provides:
"The petition shall conclude with a prayer that the property be adjudicated to the plaintiff upon payment to the owner of all damages he may sustain in consequence of the expropriation."
This provision establishes the judgment which may be sought in an ordinary expropriation suit. The District Court should have awarded appellants an avigation servitude *441 upon the payment of a certain sum of money to appellees as just and adequate compensation. Therefore, interest in this suit is due only from the date of judgment, the date the debt became due.
For the above and foregoing reasons the judgment appealed from is amended to award the avigation servitude to the appellants upon payment to the appellees of $140,178.00, plus legal interest from date of judgment and affirmed in all other respects. Cost to be paid by the appellants.
AMENDED AND AFFIRMED AS AMENDED.